## State of Vermont v. George Gilbert King, Jr.

[303 A.2d 156]

No. 112-72

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed April 3, 1973

*Kimberly B. Cheney,* Attorney General, *William T. Keefe,* Assistant Attorney General, and *Neil S. Moss,* State's Attorney, for the State.

*John J. Welch, Jr., Esq.,* Rutland, for Defendant.

**Keyser, J.** On January 31, 1972, the defendant was indicted for murder in the second degree by the Bennington County Grand Jury. The indictment charged the defendant with the unlawful killing, with malice aforethought, of Ralph Searby on November 25, 1971, at Bennington, Vermont. Trial by jury on March 27–31, 1972, resulted in a verdict of guilty. The defendant appealed to this Court. The questions for our decision relate to (1) whether the state's evidence excluded every reasonable hypothesis consistent with defendant's guilt; (2) failure of the court to properly charge the jury; and (3) whether certain remarks made by the state's attorney in his argument were prejudicial.

At the time of his death Ralph Searby was two years three months old. He was living with his mother and her one year old daughter. The defendant was also living with Mrs. Searby in her apartment, but they were not married. On the day in question, November 25, 1971, the defendant left the apartment about 3:30 A.M. to go hunting with a friend and returned around 11:30 to 12 o'clock noon.

Most of the time King was gone Mrs. Searby had laid down in her bed with her child, Ralph. When King came home she and the children were up and she had started Thanksgiving dinner. Ralph had been playing, and, to his mother, seemed to be all right. He had "just a little black and blue spots on his rear end where Georgie (King) had spanked him" the previous Monday; also a bump on his head caused by falling off the bed while jumping on it about a week before. The only time Mrs. Searby left her apartment the morning of the 25th was about five minutes to see if she could get some cranberry

sauce from a neighbor. King stayed with the children. When dinner was ready, the defendant, Mrs. Searby and her two children sat down and started eating. The boy wouldn't eat and when King told him to eat he spit in King's face. King hit the boy on his mouth with the back of his hand which caused him to fall out of his chair hitting his back on the washing machine. King picked the boy up by the arm and put him back in the chair. Mrs. Searby left the room briefly and on coming back heard "this noise and slap like" and found King spanking the boy twice on his bottom. The boy was crying and King yelled at him to stop and he did. Ralph got back up in his chair. Soon after that Mrs. Searby went into the bedroom to get dressed, and, while there, she heard a thump. Coming out, she found her child laying on his stomach on the floor near the dryer, crying, and King nudging him to get up. When King picked up the boy, he stopped crying but he looked scared. King went into the living room to watch television. Shortly, the child wanted to go outdoors so his mother dressed him to go out. After about five minutes outside, he came back into the house.

Mrs. Searby testified Ralphie was choking because she had given him a piece of turkey before he went out. His eyes soon started rolling back. She took him into the living room and King tried to give him mouth-to-mouth resuscitation. Soon a neighbor came in and she called the Rescue Squad. The child was rushed to the hospital but he was pronounced dead on arrival. An autopsy established the cause of Ralph Searby's death was extensive internal bleeding resulting from severe lacerations of the pancreas.

The defendant first contends that to sustain a verdict of guilty the state's evidence must be sufficient to exclude every reasonable hypothesis consistent with respondent's innocence. It is only where the evidence is entirely circumstantial that the circumstances must exclude every reasonable hypothesis except that the defendant is guilty. *State* v. *Harrington,* 128 Vt. 242, 253, 260 A.2d 692 (1969) ; *State* v. *Gignac,* 119 Vt. 471, 476, 129 A.2d 499 (1957); *State* v. *Sanford,* 118 Vt. 242, 244, 108 A.2d 516 (1954). This is not the situation in the case before us.

Defendant contends that the uncontroverted medical testimony was to the effect that the blows admittedly administered by defendant to the decedent child could not have caused his death; that the fatal blows could have occurred when the child fell that morning or by Mrs. Searby herself. The state produced as its witness Dr. Harris, Chief Medical Examiner. He testified that the cause of death, in his opinion, was a blow or blows to the back which lacerated the pancreas and caused the extensive and fatal bleeding; that the bruises at the midline in the back area were so aligned and so spaced as to describe a pattern which were consistent with a blow inflicted by a human fist; that in his opinion these bruises were of recent onset and occurred within an hour of the child's death; that the laceration of the pancreas was a natural consequence of a blow to the back, such as inflicted here; and that the condition of the victim, as observed by the mother (eyes rolling back) is a reaction consistent with this type of injury.

The defendant also argues that he was out of contact with the child virtually the entire morning of November 25. But the uncontroverted evidence is that he arrived back in the Searby home from his hunting trip between 11:30 A.M. and noon. He remained there continually until he accompanied the child to the hospital with the Rescue Squad. Dr. Harris testified it was his medical opinion that the child would have only survived twenty to thirty minutes after receiving the mortal wound to his pancreas. It was his opinion also that the child could have died as late as 1:00 o'clock or an hour earlier. Dr. Arthur S. Faris, a physician and Regional Medical Examiner, who lived in nearby Shaftsbury, received a call at 3:30 P.M. to go to the Putnam Memorial Hospital where he met Dr. Harris and examined the child's body. This lends credence to the time of death fixed by Dr. Harris.

Defendant's contention that the child's activities were unaccounted for immediately prior to death is not supported by the evidence. He was in his home all day except for "not quite five minutes" when he went outdoors and almost immediately returned into the house.

Dr. Harris, because Mrs. Searby thought the child died from choking, made an examination to determine whether this was, or was not, true. It was the doctor's opinion based

upon his examination that death was not due to choking on a piece of turkey meat.

A further argument defendant makes is that the decedent received impacts from sources other than the defendant on the day in question. As to this Dr. Harris testified he did not believe the blows to the mid-back area of the child were inflicted by an open hand. It was his opinion that a fall on a flat surface like a fall on the floor or against a dryer simply couldn't have inflicted those bruises.

Defendant argues that the death blow could have been dealt by the child's mother, Mrs. Searby. The uncontradicted testimony of the mother is that on the entire morning of Thanksgiving Day she did not hit, spank or abuse her son and was with him all the time except for her short trip to the neighbors, and further that no one else ever abused him other than George King, Jr.

The record clearly demonstrates the evidence produced by the state was not entirely circumstantial, thus the rule stated by the defendant is not applicable, *State* v. *Gignac, supra,* and was sufficient to warrant the submission of the case to the jury for decision.

The defendant's next briefed exception is to the failure of the court to instruct the jury that each and every material element of the crime charged must be proved by the state beyond a reasonable doubt. But this was not the exception raised at the trial below and gave the court no fair opportunity to pass judgment on this claimed exception. See *State* v. *Morse,* 127 Vt. 137, 139, 241 A.2d 328 (1968); *State* v. *Quesnel,* 124 Vt. 491, 495, 207 A.2d 155 (1964).

At the conclusion of the court's charge, the following colloquy took place between defendant's counsel and the court:

"Mr. Welch: If it please the Court, Your Honor. The defendant respectfully requests that the Court charge the jury that unless the jury be convinced beyond a reasonable doubt that the Respondent here in Court inflicted a blow upon the child which caused the death of the child, then the jury must render a verdict of not guilty as to both murder and manslaughter. Moreover, it is respectfully requested that the Court—

The Court: I think—

Mr. Welch: You didn't make it clear that the guilty act—You did not charge the jury must find beyond a reasonable doubt that the respondent inflicted a blow upon the body of Ralph Searby which operated to cause the death of that child.

Mr. Moss [state's attorney]: We disagree, Your Honor.

The Court: I think I did.

\* \* \* \* \*

Mr. Welch: Well, the only thing to my position is that as far as the guilty act goes, the jury must be convinced beyond a reasonable doubt that the death of Ralph Searby was caused by a blow inflicted by the defendant and that if they were not able to state that beyond a reasonable doubt that the death of the child was caused by a blow inflicted by the Respondent that they must return a verdict of not guilty of both murder and manslaughter."

The court then said: "I'll let the charge stand as read."

It is clear that the defendant was not excepting to the court's failure to charge, as now claimed in his brief, that to find the defendant guilty the state must prove each and every material element beyond a reasonable doubt. However, because of the serious charge against the defendant, we consider both aspects of his claim.

It is the established rule of this jurisdiction that "instructions to the jury may not be isolated into small segments and considered piecemeal but must be measured by their full context." State v. Morrill, 127 Vt. 506, 511, 253 A.2d 142 (1969); State v. Ciocca, 125 Vt. 64, 75, 209 A.2d 507 (1965).

With this in mind we cite excerpts from the court's instructions bearing on the defendant's contention of error. The court charged fully on the presumption of innocence which included the following language: ". . . So, you see the presumption of innocence is itself a piece of evidence to be weighed in the Respondent's favor on all material questions in the case in determining the question of Respondent's guilt."

The charge of the court completely instructed the jury on the doctrine of reasonable doubt. One sentence of what the court said reads: "You can not find any respondent under our system of justice guilty unless from all the evidence you believe him guilty beyond a reasonable doubt."

In charging on the matter of conflicting evidence, the court said: "If you can reconcile the evidence in the case upon any reasonable basis consistent with Respondent's innocence, you should do so."

The court also charged on the subject of circumstantial evidence during which it said:

> "By circumstantial evidence is meant the evidence from which the existence of the principal fact may be inferred, that is, whether the Respondent struck the blow which caused the death of Ralph Searby . . . . Therefore, if you can reconcile the evidence in this case upon any reasonable basis consistent with the Respondent's innocence, it is your duty to do so."

The court further instructed the Jury:

> "The essential elements which the State must prove to justify a verdict of guilty are that Mr. King, the Respondent, unlawfully killed George [sic] Searby . . . . First, determine the cause of death of Ralph Searby. . . . What was the cause of death of Ralph Searby? You must find that he was unlawfully killed by someone and if you can not find that, no crime was committed. If you find that he was unlawfully killed, then go to the question, do you find that the Respondent here did the killing."

And, again, the court charged the jury—"The State has the burden of proving this Respondent guilty beyond a reasonable doubt."

From the foregoing excerpts from the court's charge, it is evident that the defendant's request to charge was properly denied by the court. It was substantially, if not wholly, complied with although not in the identical language requested. See *State* v. *Morse, supra,* 127 Vt. at 141.

We are convinced that the jury could not have failed to understand from the court's charge but that reasonable doubt applied to each element of the crime as given them by the court, and that the defendant was presumed to be innocent of the crime charged until it was proved beyond a reasonable doubt that it was he who struck the child with the fatal blow.

A careful review of the charge demonstrates that, considered in its entirety and not piecemeal, it gave a fair and adequate statement of the law to the jury on the issues for its determination.

It has not been demonstrated how the jury was misled or confused by the court's instructions or in what respect the defendant was prejudiced. *State* v. *Morse, supra,* 127 Vt. at 141.

Lastly, the defendant contends the state's attorney committed reversible error by certain comments made during his opening argument to the jury in four instances. The comments related to the state's witness, Pamela Searby, and were expressions of opinion by the state's attorney derogatory of her as a witness. The remarks in no way referred to or impinged upon the defendant.

The comments referred to the witness as a woman without moral code or moral fiber—pathetic woman—and as not telling the truth. Mrs. Searby testified about her illegitimate children; her separation after marriage; leaving her two children with her aunt and uncle and then living from place to place with friends, and having the defendant come to live with her in her apartment. The testimony of Mrs. Searby that her child had been struck only a few times was demonstrated to be otherwise by the photographs placed in evidence showing that his body was in a bruised and battered condition.

In the light of this evidence the argument of the state's attorney cannot be considered improper. In *State* v. *Gravelle,* 117, Vt. 238, 246, 89 A.2d 111 (1952), this Court said:

> "To deny to a prosecuting officer this privilege would be to deny the right to place before the jury the logic of the testimony which leads his mind to the inevitable conclusion of guilt, which he has the right to presume will lead them to the same conclusion."

■ The defendant argues that notwithstanding his objection, the state's attorney did not retract the remarks he claimed to be improper and the court did not rule them out. The record shows that no exceptions were taken at the time each argument was made. It was only at the conclusion of the state's opening argument that defendant's counsel made his position known to the court at the bench. He said:

"If it please the Court, Your Honor. At this juncture, Your Honor, I would respectfully move for a mistrial. Out of courtesy for counsel, I did not stand up and object to final [*sic*] argument, but I feel that this objection is timely at this juncture. Counsel was commenting on the evidence, rendering his own opinion, testifying not under oath, and it is respectfully submitted, Your Honor, that such comment is forcedly, proscribed by the law and bona fide grounds for mistrial. At this juncture, therefore, I would respectfully request the Court grant the motion at this time."

The court denied the motion and the case proceeded with the defendant's argument and the closing argument by the state. Defendant's motion for a mistrial did not point out to the court what the specific argument was that defendant claimed was improper. Thus, the court without such knowledge as to just what the objectionable remarks were cannot be put in error by its ruling. And it cannot be said that the court by implication ruled that the argument now specified in defendant's brief was proper.

■ The court instructed the jury—"Now, as far as any statement relative to the facts of the case made by either counsel or the Court, you are not to base any final decision on those facts. You base your decision on the evidence from witnesses and not from facts as stated, correctly or incorrectly, by either the lawyers or the Court." Also, the state's attorney in opening his argument said that "what we (the attorneys) say should not be considered by you as evidence in itself." In any event, the instruction of the court sufficiently countered the effect of statements made by the prosecutor. *State* v. *Jackson,* 127 Vt. 237, 238, 246 A.2d 829 (1968).

Moreover, to constitute reversible error, the defendant must affirmatively show that he was prejudiced thereby. *State* v. *Jackson, supra; State* v. *Gravelle, supra.* Under the facts and circumstances shown by the record, the defendant has failed to affirmatively establish that he was prejudiced by the argument of the state's attorney and we find none. We find no error.

*Judgment affirmed.*