## Northern Terminals, Inc. v. Smith Grocery & Variety, Inc.

[418 A.2d 22]

No. 135-79

Present: Barney, C.J., Daley, Billings and Hill, JJ., and
Cook, D.J., Specially Assigned

Opinion Filed June 3, 1980

Motion for Reargument Denied June 24, 1980

390

*John P. Ambrose,* Law Office of *Donald E. O'Brien,* Burlington, for Plaintiff.

*Robinson E. Keyes* and *R. Joseph O'Rourke* of *Ryan Smith & Carbine, Ltd.,* Rutland, for Defendant.

**Hill, J.** Plaintiff appeals from a judgment of the superior court entered on a jury verdict that granted defendant $44,944.00 in damages on its counterclaim. We affirm.

On appeal from a jury verdict the Court is obliged to construe the evidence in the light most favorable to the prevailing party, defendant here, without regard to modifying evidence, for it is implicit in a jury verdict in favor of one party that the jury believed, or at least attached greater significance to, the evidence supporting that party's contentions. *Giroux* v. *Lussier,* 127 Vt. 520, 522, 253 A.2d 151, 153 (1969). Viewing the evidence in this light, the record shows that on September 17, 1974, pursuant to a written agreement, plaintiff leased to

defendant the northerly store of a two store mini-mall at 188 South Main Street, Rutland, Vermont. The mini-mall consisted of a 4,000 square foot building housing the two stores, a gasoline island marketer, and a paved parking area containing approximately fourteen to twenty spaces. The agreement provided that the leased store was approximately twenty feet by one hundred feet and that defendant was entitled to use the common walkway and parking areas abutting the leased premises. Although at the time the lease was signed plaintiff had plans to construct an addition to the building, defendant was not so informed.

On or about December 10, 1974, defendant opened a hardware business at the leased location. Five months after it had opened and after the building addition had been completed and occupied by a Triple-S Blue Stamp Redemption Center, defendant claimed that its business began to decline. Defendant attributed this to severe parking shortages caused by the opening of the Triple-S store. The parking problem continued, according to defendant, because plaintiff failed, after repeated promises, to expand the mini-mall's parking facilities to accommodate the new volume of business brought in by Triple-S.

Defendant paid the rent due under the lease until December 1975, when it ceased remitting payments. Nevertheless, defendant remained in possession of the premises until July 1977. In April 1976, after defendant stopped paying rent, but before it abandoned the premises, the Triple-S store closed, thus alleviating the claimed parking problems. According to defendant, however, it was too late to reverse its declining business.

In August 1976, plaintiff commenced the present suit in the District Court of Vermont, Unit 1, Rutland Circuit, seeking eviction and back rent. Defendant answered denying the amount of rent claimed and counterclaimed against plaintiff for wrongful interference with defendant's business. The counterclaim alleged that construction of the addition to the mini-mall after the lease had been executed and defendant had taken possession overburdened the existing parking facilities, thereby interfering with defendant's right to quiet enjoyment. The denial of the amount of rent claimed due by plaintiff was based on the allegation that defendant had been overcharged

for light and heat and that it had never received the full 2,000 square feet of store space specified in the lease.

The jury awarded plaintiff a verdict on its rent claim, albeit in a reduced amount, and granted defendant a verdict on its counterclaim. Plaintiff filed post-trial motions to set aside defendant's verdict and for a new trial, both of which were denied. It then brought this appeal.

Plaintiff makes three claims of trial court error that are properly presented for our review. It first claims that the trial court erred in allowing defendant's president and treasurer, Irving Smith, to testify as an expert witness regarding the damages suffered by defendant, since, as a matter of law, Smith was not sufficiently qualified. We disagree.

This Court has held time and again that "[t]he question of competency of an expert witness is a preliminary one for the trial court to determine in its sound discretion, and the court's action is not revisable on appeal unless it appears from the evidence to be erroneous or founded upon an error of law." *South Burlington School District* v. *Calcagni-Frazier-Zajchowski Architects, Inc.,* 138 Vt. 33, 50, 410 A.2d 1359, 1367 (1980) (quoting from *Alling Construction Co.* v. *Bissette,* 132 Vt. 331, 333, 318 A.2d 666, 668 (1974)). Our review of the record clearly indicates that there was no such error. The trial court quite properly within its discretion allowed the witness to testify "as an expert in the area of accounting projections of business," based on the evidence that the witness received a diploma in accounting in 1948 from the Bentley School of Accounting; that for thirteen years he was a supervisor in the accounting department of Remington Arms Company in Bridgeport, Connecticut; that for three years he was a financial analyst and budget director for Casco Products, also in Bridgeport; and that for ten years he operated a grocery store in Wallingford, Vermont, the business of which consisted partly of hardware sales.

We find unpersuasive plaintiff's ancillary argument on this issue that while possession of a skill is an acceptable basis from which a witness may testify as an expert, possession of experience is not. Professor McCormick addressed this issue rather succinctly when he wrote that a witness may testify as an expert if he has "sufficient skill, knowledge, or experience

in [a particular] field or calling [so] as to make it appear that his opinion or inference will probably aid the trier in his search for truth. The knowledge may in some fields be derived from reading alone, in some from practice alone, or as is more commonly the case, from both." C. McCormick, Handbook of the Law of Evidence § 13, at 30 (2d ed. 1972) (footnotes omitted).

The next claim of error involves the manner in which the trial court qualified Smith as an expert witness. More particularly, plaintiff contends that by referring to Smith as an "expert," the trial court ordained his testimony with some talismanic persuasiveness, the result of which was that the jury inevitably attached too great a significance to it. This argument fails to take into account, however, the trial court's unchallenged charge to the jury, see V.R.C.P. 51(b), that Smith's testimony was "to be weighed . . . along with the other evidence," that the value of the testimony "depend[ed] upon the honesty and ability of the witness and upon the facts used by him as a basis for his opinion," and that "[t]he weight to be given expert testimony is solely a matter for your [the jury's] determination." It cannot be denied, in light of this instruction, that the trial court removed any undue prominence from Smith's testimony, if in fact that resulted from the use of the term "expert." Accordingly, no prejudicial error appears. See *State* v. *King*, 131 Vt. 200, 209, 303 A.2d 156, 162 (1973); *Foster's Ex'rs* v. *Dickerson*, 64 Vt. 233, 263, 24 A. 253, 262 (1891); *Pratt* v. *Rawson*, 40 Vt. 183, 188 (1868).

Lastly, plaintiff contends that the trial court erred in denying its motion for a directed verdict on defendant's counterclaim. In support of its motion, plaintiff raised three grounds: (1) that the evidence of damages failed to provide a sufficient basis on which the jury could predicate the verdict; (2) that the evidence failed to show a substantial interference with defendant's rights; and (3) that under the lease agreement the landlord was entitled to give other tenants the use of the parking facilities.

Relying on *Berlin Development Corp.* v. *Vermont Structural Steel Corp.*, 127 Vt. 367, 250 A.2d 189 (1968), plaintiff initially argues that the defendant's evidence was insufficient since the damages sought, *viz.*, lost profits of a relatively new

business, were "inherently speculative and remote." Even assuming, however, for the sake of argument, that the damages were speculative and remote, it does not necessarily follow that plaintiff was legally entitled to a directed verdict. See *Nichols* v. *Central Vermont Railway*, 94 Vt. 14, 22–24, 109 A. 905, 909–10 (1919) (Miles, J., dissenting), *cited with approval in Clark* v. *Aqua Terra Corp.*, 133 Vt. 54, 58, 329 A.2d 666, 668 (1974). The main issue presented by defendant's counterclaim was whether the plaintiff, as lessor, had breached its covenant of quiet enjoyment. The sufficiency of the evidence on this issue was not raised by the first ground for plaintiff's motion; rather it was raised by grounds two and three discussed below. Ground one was addressed to the sufficiency of the evidence on damages in the amount claimed. But defendant did not have to prove damages in any specific amount to take the case to the jury; it merely had to produce enough evidence which, when viewed favorably, tended to show an invasion of a legal right. For if such an invasion was established, particularly with respect to real property, the law requires that it be recognized, "even if only by way of nominal damages." *Clark* v. *Aqua Terra Corp.*, *supra*, 133 Vt. at 58, 329 A.2d at 668. That defendant had produced enough evidence on this issue to take the case to the jury is amply supported by the record. Therefore plaintiff was not entitled to a directed verdict on this ground. Furthermore, the question as to the sufficiency of the evidence on damages in the amount claimed was not properly preserved for review, since no error was claimed or briefed regarding the trial court's denial of plaintiff's motion to set aside the verdict or for a new trial. See *Tallarico* v. *Brett*, 137 Vt. 52, 61, 400 A.2d 959, 965 (1979).

With respect to its second and third grounds for a directed verdict, plaintiff argues that the evidence failed to show "any direct, material and substantial interference with whatever rights the tenant had under the lease agreement," and that, in any event, defendant was required to share the parking facilities with the other tenants, including the tenant of the later constructed store. We find these arguments unpersuasive.

As a general rule, a covenant of quiet enjoyment is implied in a lease of real property. *Knapp* v. *Town of Marlboro*, 29 Vt. 282, 286 (1857). This covenant is breached where

there has been "(1) a *substantial* interference with [the lessee's] use of the demised premises; and (2) . . . [the] interference has been caused by the lessor." 2 R. Powell, The Law of Real Property ¶ 225[3], at 273 (Rohan rev. ed. 1977). More particularly, there is a breach where "subsequent to the tenant's entry, through no fault of the tenant, a change in the condition of the leased property caused by the landlord's conduct . . . makes the leased property unsuitable for the use contemplated by the parties, [and] the landlord does not correct the situation within a reasonable period of time after being requested to do so. . . ." Restatement (Second) Property § 5.4 (Tent. Draft No. 2, 1974). See also *id.* § 6.1; *Pollock* v. *Morelli*, 245 Pa. Super. Ct. 388, 392–93, 369 A.2d 458, 460–61 (1976).

■ Under the lease in the instant case, the premises demised included "the common walkway and parking areas connected with said premises." In other words, defendant had the right together with the other tenant in the two store minimall to use the fifteen to twenty parking spaces on the premises. This was the factual understanding that underlay the lease negotiations. The proposed expansion of the mall was never communicated to defendant, either at the time the lease was signed or upon entry, even though plaintiff had already filed for a building permit. As a result, defendant justifiably assumed that only two businesses would be sharing the parking facilities, and, accordingly, struck its bargain on that basis. Cf. *Kelly* v. *Miller*, 249 Pa. 314, 316–17, 94 A. 1055, 1056 (1915) (tenant entitled to rely on condition of premises at time of lease). Clearly, if defendant's business was curtailed due to an overwhelming volume of business attributable to the other tenant of the original building, whoever that may be, he would have no complaint, for he was obliged to share with that tenant. But here defendant's injury was caused by the overwhelming volume of business attributable to a third tenant who occupied the later built store.

While there are some cases to the effect that deprivation of or a change in a portion of a tenant's parking facilities does not constitute a breach of quiet enjoyment, see *Joseph* v. *Hustad Corp.*, 153 Mont. 121, 454 P.2d 916 (1969); *Lott* v. *Guiden*, 205 Pa. Super. Ct. 519, 211 A.2d 72 (1965), they are

distinguishable from the present case. In those cases, the tenant claimed either a right to a pro rata share of a finite number of parking spaces or an exclusive right to particular spaces. In each case, the court rejected the tenant's argument, holding that he was required to share with the other lessees and that there was no evidence that the tenant did not have access to sufficient parking apart from that claimed. In the present case, defendant agrees that it was required to share the parking facilities. The only dispute is with whom it was required to share. And, as we have stated above, the negotiations between the parties contemplated use of the premises by only two tenants. Moreover, there is no question but that the evidence tended to show that defendant's use of the parking facilities was curtailed by the traffic attributable to the Triple-S store and that there were no additional facilities of which the defendant could have taken advantage.

The evidence also shows that defendant made repeated requests to plaintiff to remedy the parking problems created by expanding the mall and that these requests continually went unanswered. Defendant was entitled, therefore, to recover damages, including loss of anticipated business profits. See Restatement, *supra*, § 9.2(8) ; cf. *Berlin Development Corp.* v. *Vermont Structural Steel Corp., supra,* 127 Vt. at 373, 250 A.2d at 193 (dicta) (loss of profits recoverable under some circumstances if within the contemplation of parties).

■ Plaintiff's argument that defendant had to abandon the premises in order to recover is misplaced. Abandonment has been required in Vermont only where a tenant seeks to prevent enforcement of a lease based on the common law defense of constructive eviction. See *Legier* v. *Deveneau,* 98 Vt. 188, 190, 126 A. 392, 393 (1924). The rationale advanced for the rule is that "[i]t would be unjust to permit [a] tenant to remain in possession and escape the payment of rent by pleading a state of facts which, though conferring a right to abandon, had been unaccompanied by the exercise of that right." *Id.* While the modern judicial trend is to abrogate the requirement of abandonment in all cases, Restatement, *supra,* Explanatory Notes § 6.1, we need not decide that broad policy issue, because defendant here seeks damages for the landlord's breach of covenant, not "escape" from its rent obligation un-

der a constructive eviction theory. And where it is damages that are sought it is not necessary for the tenant to abandon. See *Powell, supra,* at 271–72.

Plaintiff raises numerous other grounds of trial court error, but our examination of the record indicates that they have not been properly presented for appellate review. Accordingly, we do not reach these issues. See *State* v. *Blakeney,* 137 Vt. 495, 503, 408 A.2d 636, 641 (1979); *State* v. *Ahearn,* 137 Vt. 253, 268, 403 A.2d 696, 707 (1979); *Palmisano* v. *Townsend,* 136 Vt. 372, 375, 392 A.2d 393, 395 (1978); *Monti* v. *Town of Northfield,* 135 Vt. 97, 99, 369 A.2d 1373, 1375–76 (1977); *Gregoire* v. *Insurance Company of North America,* 128 Vt. 255, 259–60, 261 A.2d 25, 28–29 (1969).

*Affirmed.*

## On Motion for Reargument

Subsequent to the handing down of the opinion, appellant, by motion for reargument, called to our attention a statement relative to the issues raised by the motion for a directed verdict which was not correctly stated. The opinion was recalled and the error duly corrected.

Other than the foregoing, the motion presented no points which were overlooked, misapprehended or not covered in the opinion. The revision does not change the result and the entry is not affected. No ground for reargument appears, and the motion is denied. See *Albright* v. *Fish,* 136 Vt. 387, 395, 394 A.2d 1117, 1121–22 (1978).