Argued and submitted November 4, 1983, reversed and remanded March 14, reconsideration denied April 20, petition for review denied May 30, 1984 (297 Or 228)

# ELLIS,
*Appellant,*

*v.*

# SPRINGFIELD WOMEN'S CLINIC et al,
*Respondents.*

(16-81-03629; CA A26027)

678 P2d 268

William A. Gaylord, Portland, and John A. Hudson, Eugene, argued the cause and filed the briefs for appellant.

Randall Bryson, Eugene, argued the cause for respondents. With him on the brief were Bryson & Bryson and Calkins & Calkins, Eugene.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is an action for medical malpractice. Plaintiff, personal representative of the estate of Raylene Ellis, alleges that defendants, three physicians and their professional corporation, were negligent in the care and treatment of Mrs. Ellis, resulting in her death. The case was tried to a jury, which returned a verdict for defendants. Plaintiff appeals, contending that the trial court erred in the giving of a certain jury instruction.[1] We reverse.

On June 2, 1978, decedent gave birth to a child at McKenzie-Willamette Hospital. She was attended by defendants, who had treated her throughout her pregnancy. During the birth, she suffered vaginal wounds which subsequently became infected. She died on June 11, 1978. Plaintiff alleges that her death was due to defendants' failure timely to diagnose and treat the infection.

At trial, the court gave the following instruction:

"If you believe from the evidence in this case that competent obstetricians in the same or similar communities as the Defendants might have differed with Defendants in their judgment of proper care and treatment of Raylene Ellis during the time that Defendants were taking care of her, but if the Defendants in good faith and in the exercise of reasonable care, erred in such judgment, then they would not be negligent."

This instruction is almost identical to the one we approved in *Roach v. Hockey,* 53 Or App 710, 715, 634 P2d 249, *rev den* 292 Or 108 (1981), as being a "complete and correct statement of the law." The trial court can hardly be faulted for giving it. On re-examination of the instruction, however, we now conclude that our approval was in error. The cases relied on in *Roach* correctly set forth the principle that a physician is not liable for an error in judgment if the judgment is consistent with the exercise of reasonable care and skill. *See Malia v. Meacham,*

---

[1] Plaintiff also assigns as error: (1) the denial of plaintiff's motion to dismiss two jurors for cause; (2) the giving of defendants' jury instruction relating to the applicable standard of care instead of plaintiff's requested instruction; (3) the overruling of plaintiff's objections to certain testimony by an expert witness and (4) defense counsel's alleged misconduct during closing argument. Because of our disposition of the case, we need not consider (1); (2) and (3) are not well taken; and (4) was not properly preserved.

187 Or 330, 211 P2d 747 (1949); *Moulton v. Huckleberry,* 150 Or 538, 46 P2d 589 (1935); *King v. Ditto,* 142 Or 207, 19 P2d 1100 (1933). The language of the instruction, however, fails to convey that principle accurately. Instead, it adds an element— "good faith." The introduction of that concept allows the jury to consider the motivations of the defendants. Such a consideration has no place in an action for ordinary negligence. The instruction, therefore, was erroneous.

Having found that the instruction was an incorrect statement of the law, we must still determine whether, under the facts of this case, it was prejudicial error. We believe that it was. Because of the instruction, defendants were able to focus their closing argument on their motives, rather than on their exercise of reasonable care.[2] In fact, we have little doubt that they introduced the instruction for just that purpose. It is not difficult to argue (or believe) that defendants acted with the purest of motives, but that is not the question here. In our view, the ability to focus the jury's attention significantly on

---

[2] For example, at one point during closing argument defense counsel stated:

"And in light of the — of the attacks here on the truthfulness and motives of someone like Dr. Chavin, I would just like to suggest to you to consider and observe and remember Dr. Chavin's testimony and his demeanor. Think of his character and his motives as the Court will instruct you. And I would suggest to you that he appears here as an extremely well qualified and in a professional way in explaining everything that he was involved in. And more importantly, he is a very sensitive human being. And as Mr. Ellis so eloquently said in his testimony about going around and checking on obstetricians, one of the most caring doctors that they could find to take care of Raylene.

"Now, I'd suggest to you every bit as much as the very own testimony from Mr. Ellis' mouth that Dr. Chavin cared about Raylene Ellis and that if there was any way with any fiber of his body that he could have done more or guessed the situation better and that fate was going to wreak this devastating situation on this wonderful woman, don't you think that he would have done literally anything to prevent that? And I would suggest to you as far as his motives, in questioning him now as to his truthfulness on the stand, that he simply speaks for himself.

"The efforts here to lay the death of Raylene Ellis at the foot of this man are unjustified. Maybe it's a special relationship, a woman and her doctor. We as men do not go into childbirth. Some of us think: Well, gee, there's probably nothing to it. But I'd suggest to you there is some terrific rigors and a knowing of pain that most men will never experience. And that perhaps there is a special situation and when you're thinking about motives of a person and questioning them in this situation, I'd suggest to you Dr. Chavin isn't in this situation for the test tubes or the prestige of what he's doing, he's there because he cares and because he simply — it's as simply as that, as one human being to another. And that's all I would ask is that you recall his testimony in looking at him and ask you to consider his motives and what he is about, as you do any other witness."

the irrelevant issue of defendants' motives instead of on the real issues in the case is likely to have resulted in prejudice to plaintiff. We therefore reverse the judgment of the trial court and remand for a new trial.

Reversed and remanded.