# Thomas E. Deyo and Janice P. Deyo v. Donald L. Kinley, M.D.

[565 A.2d 1286]

No. 88-025

Present: Allen, C.J., Dooley and Morse, JJ., and Martin, Supr. J., Specially Assigned

Opinion Filed May 19, 1989

Motion for Reargument Denied July 25, 1989

*Kiel & Boylan*, Springfield, for Plaintiffs-Appellees.

*Allan R. Keyes* and *Ellen W. Burgess* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendant-Appellant.

**Dooley, J.** Thomas and Janice Deyo, husband and wife, brought an action for medical malpractice against Donald L. Kinley, M.D. in August, 1985, in Windham Superior Court.

Plaintiffs, appellees here, alleged negligent diagnosis and treatment of Mr. Deyo's spinal condition. Trial by jury resulted in judgment for plaintiffs: $550,343.45 awarded to Thomas; $125,000.00 awarded to Janice. After denial of his motions for a new trial or, in the alternative, for remittitur, defendant filed this appeal. We affirm.

Defendant raises four issues on appeal:

1. Plaintiffs' counsel improperly asked defendant's expert witness whether he rendered opinions for insurance companies, thereby injecting insurance into the case;

2. Plaintiffs' counsel included in his closing argument to the jury a liability claim not supported by the medical evidence;

3. The trial judge failed to charge the jury that plaintiffs must introduce expert testimony to prove each element of medical malpractice; and

4. The trial judge failed to charge the jury that a physician is not required to be infallible and is not liable for an error in judgment or a bad outcome.

On each of the alleged errors, defendant seeks a new trial. After a discussion of the facts, we discuss the evidentiary issues followed by the jury charge issues. In reviewing defendant's claims, we examine the record in a light most favorable to the prevailing party. See *Pooler v. Derby*, 129 Vt. 362, 364, 278 A.2d 732, 734 (1971) (in case involving an appeal from final judgment this Court must view evidence in light most favorable to prevailing party).

Thomas Deyo first consulted Dr. Kinley in August or September, 1982, for complaints of hip pain. Defendant treated Deyo with ultrasound therapy and cortisone injections. On September 12, 1982, Deyo's pain was so severe he went to the Brattleboro Memorial Hospital emergency room. Later, defendant examined Deyo and found that he had pain down the right leg, weakness in the right thigh, and no reflex jerk of the right knee. Based on the examination, defendant made a preliminary diagnosis of a herniated disc between the third and fourth lumbar vertebrae of the spine. After consultation with a neurologist and a radiologist, defendant made the same final preoperative diagnosis.

On September 20, Deyo underwent surgery during which defendant performed a laminotomy of the affected vertebrae.[1] After further testing, defendant performed a surgical exploration and repeat laminotomy of the same vertebrae on September 23. After the second surgery, Deyo sustained partial paralysis of both lower legs, partial incontinence of the bowel and bladder, and sexual impotence, a collection of symptoms known as "cauda equina syndrome."

In January 1986, Deyo consulted another physician, who found that his condition was worsening. This physician diagnosed Deyo as having spinal stenosis (narrowing of the spinal canal) and performed a lumbar laminectomy on March 25, 1986.[2]

At trial, plaintiffs' medical experts testified that defendant misdiagnosed Deyo as suffering from a herniated disc and that the correct diagnosis was spinal stenosis. They further testified that the proper treatment for spinal stenosis is a laminectomy, and that if the laminectomy had been performed in 1982, Deyo would not have suffered from cauda equina syndrome. Defendant's expert witnesses testified that defendant's diagnosis was appropriate based on the clinical findings and test results, that defendant's treatment of Deyo did not deviate from the standard of care, and that even if a laminectomy had been performed in 1982, the outcome may have been the same.

Defendant argues that he is entitled to a new trial because he was prejudiced by the deliberate injection of insurance into the case by plaintiffs' counsel. The issue arose when plaintiffs' counsel was cross-examining one of defendant's expert witnesses. Counsel sought to show that the witness regularly worked for the defense in medical malpractice cases. Before plaintiffs' counsel got very far into this line of questioning, defendant's counsel objected and indicated that plaintiffs were about to inject insurance into the case. After some discussion, the court ruled that plaintiffs were not permitted to suggest that the defense was conducted by an insurance company, but

---

[1] A laminotomy may be defined as the "surgical division of a vertebral lamina" ("the part of the neural arch of a vertebra extending from the pedicle to the median line"). Webster's Medical Desk Dictionary 373 (1986).

[2] A laminectomy is defined as the "surgical removal of the posterior arch of a vertebra." Webster's Medical Desk Dictionary 373 (1986).

went on to say that it would not exclude proper inquiry into other cases in which the witness may have appeared or offered opinions. Following this ruling, plaintiffs' counsel elicited from the witness that he frequently reviewed patients' records to determine whether there was malpractice and that this review was generally done for the physician against whom a claim of malpractice has been filed. Counsel then elicited that the witness did medical examinations very frequently (eight to ten times a week) for patients involved in litigation or workers' compensation claims and that those examinations were usually done on behalf of insurance companies. There was no objection to the insurance company question and answer and no further development of the issue. Defendant argues that the question and answer on insurance companies warrants reversal. Plaintiffs respond that the mention of insurance, to show the financial interest of the witness in his opinions, is a relevant and permissible line of inquiry.

■■ First, we must address whether this issue is preserved for our review. Normally, failure to object below precludes review by this Court. V.R.E. 103(a)(1); *In re Johnston*, 145 Vt. 318, 321, 488 A.2d 750, 752 (1985). This Court has consistently held that where the aggrieved party fails to make a "specific objection, including a clear statement of the matter to which he objects and the grounds of the objection" at trial, the issue is not preserved for consideration by this Court on appeal. *State v. Lettieri*, 149 Vt. 340, 342, 543 A.2d 683, 685 (1988) (citations omitted). The purpose of requiring a timely objection is to bring the error to the attention of the trial court so that the court may have "an opportunity to rule." *State v. Chambers*, 144 Vt. 234, 242, 477 A.2d 110, 114, *cert. denied*, 469 U.S. 875 (1984).

Defendant objected properly to a line of questioning which may have revealed that the defense was funded by an insurance company. The ruling cured this potential error, and the witness did not disclose that he was retained by defendant's insurer. Defendant made no further objection to the line of questioning and specifically to the question about the witness's work for insurance companies. By his silence, defendant acquiesced in the admission of the testimony.

██ We recognize that even where an issue is not preserved, we can reverse in exceptional cases where there is plain error that affects substantial rights of the party. To find plain error, we have required a showing that the error is so egregious as to result in a "miscarriage of justice." *State v. Ayers*, 148 Vt. 421, 426, 535 A.2d 330, 333 (1987). Defendant argues correctly that the deliberate injection of insurance into a case in order to prejudice a jury and benefit a litigant is normally reversible error. *Hardy v. Berisha*, 144 Vt. 130, 135, 474 A.2d 93, 96 (1984). Plaintiffs assert, however, that the question and answer fall within an exception to that principle. See V.R.E. 411 (evidence of insurance against liability admissible to show "bias or prejudice of a witness"). We need not decide this question because any error here was not preserved and did not rise to plain error.

Defendant's second claim is that it was error for plaintiffs' counsel to include in his closing argument a liability claim unsupported by the medical evidence. During rebuttal argument, plaintiffs' counsel urged the jury to find that the absence of Deyo's right ankle jerk was an indication that the surgery performed by defendant was unsuccessful.[3] Following this argument, the court recessed. When court resumed, defendant's counsel objected to plaintiffs' rebuttal argument, claiming that there was no medical evidence to support it. The trial judge ruled that any error would be cured in his instruction to the jury that argument of counsel is not evidence. The court gave that instruction. Defendant made no further objection.

██ The objection to plaintiffs' argument came well after the argument. Although we normally require an immediate objection, *State v. Curtis*, 145 Vt. 552, 553, 494 A.2d 143, 144

---

[3] Plaintiffs' counsel said:

I think that perhaps one thing though that has been overlooked in making that comment is all of the witnesses were indicating, Doctor Wallman particularly, that that absent right knee jerk is an indication, a very clear indication of that fourth nerve root. The medical records indicate ... Mr. Deyo still had zero ankle jerk in the right knee. And I ask you ladies and gentlemen whether that indicates that that nerve root, the fourth nerve root that controls that, that had the problem beforehand, was perfectly freed up and okay as a result of that surgery. I suggest the obvious answer is no.

(1985) ("Generally, the argument must be interrupted at the moment the claimed prejudicial argument is made."), we find that the objection in this case was sufficiently contemporaneous to allow us to review the claim of error. See *Hardy v. Berisha*, 144 Vt. at 134, 474 A.2d at 95 ("failure to object to counsel's argument until its completion does not waive the right to raise the objection on appeal"). As noted below, however, the failure of counsel to object immediately and counsel's apparent acceptance of the court's curative instruction does affect the obligation of the court in responding to the asserted error.

For purpose of analysis, we will assume that the remarks made by plaintiffs' counsel were improper although plaintiffs argue vigorously that they were simply drawing a supportable inference from the evidence. We emphasize our admonition in *State v. Lapham*, 135 Vt. 393, 407, 377 A.2d 249, 257 (1977), that:

> Comments of counsel shall not be inflammatory, nor depart from the evidence .... The burden of proving prejudice is on the respondent. Whether an improper argument is of a nature which requires a reversal depends on the attending circumstances, and there is usually little profit in comparing one case with another; prejudice must affirmatively appear. However, certain circumstances may command themselves to aid in this evaluation, *e.g.*, the treatment of the objection or exception and the jury instructions. Overall, were the rights of the party injuriously affected?

(Citations omitted.) In *State v. King*, 131 Vt. 200, 209, 303 A.2d 156, 161 (1973), the defendant moved for a mistrial based on improper argument of the prosecutor during the prosecutor's opening argument. The motion was made at the conclusion of the argument. The trial court denied the motion and gave a curative instruction in its charge to the jury:

> Now, as far as any statement relative to the facts of the case made by either counsel or the [c]ourt, you are not to base any final decision on those facts. You base your decision on the evidence from witnesses and not from facts as stated, correctly or incorrectly, by either the lawyers or the [c]ourt.

*Id.* at 209, 303 A.2d at 162. We held that this "instruction of the court sufficiently countered the effect of statements made by" opposing counsel. *Id.* Further, the defendant failed to show any prejudice from the offending statements. *Id.* at 210, 303 A.2d at 162.

■ Here, the trial court ruled it would cure the asserted error by instructing the jury to not consider the comments of counsel as evidence. The record shows the judge instructed the jury as follows:

> First of all, as far as the facts that came from the witness are concerned, and the law is it comes from the judge, I do want to again point out to you, the attorneys have already mentioned it several times, that it is not what the attorneys say the evidence was that governs your deliberation. What they do is they comment on the evidence, they argue the evidence as they heard it from the witnesses, but your recollection, and your understanding, and your decision, regarding the facts in this case is going to be based on what the witnesses said, not what the attorneys said.
>
> Now, I don't mean just during closing argument. I mean throughout the course of the trial.... [Y]ou don't go by what the attorneys said as far as medical opinions are concerned.... You go by what the witnesses said.

There are other important factors here. The initial objection came well after the argument denying plaintiffs' counsel the opportunity to cure any error if he desired. Because of the lapse of time, the trial court could not give an immediate curative instruction. The above jury instruction was given right after the recess within minutes of defendant's objection. Defendant's counsel appeared to accept the court's response to the objection and did not seek more, move for a mistrial or object to the jury charge. The court's instruction served adequately to cure any error that might have been made in plaintiffs' closing argument.

Defendant next claims error in the trial court's failure to instruct the jury on two points: (1) that expert testimony must be introduced to prove each of the elements of medical malpractice under 12 V.S.A. § 1908; (2) that a physician is not required to be infallible, and is not liable merely for an error

in judgment or a bad outcome. For purpose of our analysis, we will assume these issues were fully preserved.[4]

■■ Defendant's first alleged error is based on the requirement of expert testimony to show liability in a medical malpractice case. The elements of a medical malpractice action are established by statute.[5] We have held that this statutorily imposed burden usually "will be satisfied only by expert testimony." *Larson v. Candlish*, 144 Vt. 499, 502, 480 A.2d 417, 418 (1984); *Senesac v. Associates in Obstetrics & Gynecology*, 141 Vt. 310, 313, 449 A.2d 900, 902 (1982). This rule has been adopted because normally a complicated medical procedure, not easily evaluated by a lay person, is at issue. See *Utzler v. Medical Center Hospital*, 149 Vt. 126, 129, 540 A.2d 652, 654 (1987). These cases do not stand for the proposition that the judge must charge the jury that the plaintiff's burden of proof is satisfied only by expert testimony. To the contrary, whether the plaintiff has met the burden of proof sufficient to send the case to the jury is a matter of law for the court to decide. *Utzler*, 149 Vt. at 128–29, 540 A.2d at 654.

---

[4] The trial court stated that matters raised at the charge conference would be treated as preserved even though the party failed to raise them after the charge. Following the charge, the court stated that it specifically denied any charge requests not contained in the charge and that no further objection was necessary for preservation. Apparently relying on the court's statement, defendant failed to make specific objections to the charge on the points briefed here although these points were contained in requests to charge. The plaintiffs have not argued that defendant failed to preserve the issues. In view of plaintiffs' position, we do not reach whether this unusual procedure complies with V.R.C.P. 51(b). We would caution trial judges, however, that the purpose of the objection requirement in the rule is to allow the court to take a second look at charge issues that a party is preserving for appeal. A blanket failure to take that last, considered look at the issues is undesirable.

[5] 12 V.S.A. § 1908 provides in pertinent part:

[T]he plaintiff shall have the burden of proving:

(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by a reasonably skillful, careful, and prudent health care professional engaged in a similar practice under the same or similar circumstances whether or not within the state of Vermont.

(2) That the defendant either lacked this degree of knowledge or skill or failed to exercise this degree of care; and

(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

Arguments similar to that advanced here were rejected in the early case of *Sheldon v. Wright*, 80 Vt. 298, 311–12, 316–18, 67 A. 807, 811–12, 813–14 (1907). The Court noted that the jury must evaluate any expert testimony along with other testimony in the case:

> The expert in a case like this testifies to facts of a different class, or to the interpretations of facts, matters, for the most part, about which the jury are not expected to have knowledge of their own, but nevertheless they must apply their sound judgment to the comparison, sifting and weighing of such testimony and to a consideration of the sources from which it comes.

*Id.* at 317, 67 A. at 814. This view of the role of the expert witness is consistent with Rule 702 of the Vermont Rules of Evidence that allows expert testimony where it "will assist the trier of fact to understand the evidence."

By requiring expert testimony in support of medical malpractice liability, we are not excluding the opinions and conclusions of lay witnesses on matters within their knowledge and comprehension. See V.R.E. 701. We are reluctant to require a jury charge that would give undue weight to particular testimony and interfere with the jury's role to thoroughly sift the evidence, drawing on the assistance that expert testimony provides. The requested charge could confuse or mislead the jury on the weight to give nonexpert witnesses in the case before them. See *Magbuhat v. Kovarik*, 382 N.W.2d 43, 46 (S.D. 1986) (error to charge that negligence must be established by medical experts and that standard of skill and care must come only from opinions of such experts because jury might unfairly disregard observations by lay persons).

We hold that the trial court in a medical malpractice action need not charge the jury that the plaintiff must introduce expert testimony to prove each element of medical malpractice. The jury charge in this case highlighted the proper role of the jury to consider expert testimony along with other evidence in determining the questions before them. See *Northern Terminals, Inc. v. Smith Grocery & Variety, Inc.*, 138 Vt. 389, 393, 418 A.2d 22, 25 (1980).

Defendant's second claim of error in the instructions is based on the failure of the trial court to deliver two of defendant's requests to charge. They were related and read as follows:

5. Diagnosing the nature of a patient's illness and treating the same is a question of judgment and a physician cannot be held liable for an error in judgment unless it is so gross an error as to be inconsistent with good care. In other words, a physician is not required to be infallible. Therefore, if you find that Dr. Kinley possessed the requisite degree of knowledge and skill in his treatment of Thomas Deyo, then you must return a verdict for [defendant] ..., even if you decide that he erred in his treatment of Thomas Deyo at that time.

6. In a medical malpractice case, you may not presume that the physician was negligent solely because the patient had a bad outcome from the physician's treatment. I instruct you, therefore, that you may not reason backwards and conclude that Dr. Kinley did something medically wrong merely because Thomas Deyo developed cauda equina syndrome following Dr. Kinley's surgery.

The trial court refused the requests, indicating that it preferred to follow the statutory definition and then explain the law of negligence and malpractice. The court charged that plaintiffs had the burden of proof on all elements and that the verdict should not be based on sympathy. It further charged the three elements of the medical malpractice statute, 12 V.S.A. § 1908: degree of knowledge or skill applicable, failure to exercise that degree of knowledge or skill, and proximate cause.

There is no doubt that the language in defendant's requests to charge is found in various decisions of this Court. See, e.g., *Utzler v. Medical Center Hospital*, 149 Vt. at 127, 540 A.2d at 653 (physician not required to be infallible); *Domina v. Pratt*, 111 Vt. 166, 170, 175–76, 13 A.2d 198, 200, 203 (1940) (liability not judged by results; defendant not liable for error in judgment). The issue before the Court, however, is whether the trial court was obligated to charge the jury in this manner.

The trial court is required to charge the jury "fully and correctly upon every point raised by the evidence and material to a decision of the case." *Sachse v. Lumley*, 147 Vt.

584, 588, 524 A.2d 599, 601 (1987). In fulfilling its duty, the court may "select its own language, and how far it shall go in elaboration of the point is within its own discretion." *McKenna v. McDonald*, 111 Vt. 60, 63, 10 A.2d 208, 210 (1940). Defendant argues that as the trial court failed wholly to charge on the issues covered by the requests, its discretion to choose the language to express the legal principles is not involved.

Defendant's argument finds support in *Domina v. Pratt*, a medical malpractice case in which this Court reversed a judgment for plaintiff because of an error in the charge to the jury. In *Domina* the Court found error in the failure to charge that a doctor's actions do not "amount to malpractice unless so gross as to be inconsistent with due care ...." 111 Vt. at 176, 13 A.2d at 203. The rationale of the *Domina* Court was that:

> [W]hile the general principles of the physician's liability were adequately covered, the question of an error in judgment was not called to the attention of the jury. In view of the conflicting evidence as to the plaintiff's symptoms and condition when brought to the defendant's office, this instruction should have been given, and the failure to do so constitutes reversible error.

*Id.* Defendant in the instant case submitted a request to charge relying upon the *Domina* language.

We believe the language required in *Domina* is a poor statement of the applicable law and, in any event, should not be required in all medical malpractice charges. Thus, we overrule *Domina* to the extent inconsistent with the views we express here, and find that the charge in this case fairly covered the elements of malpractice and affirm.

The *Domina* charge requires a "gross" error in judgment for recovery. The word "gross" has been part of our negligence law only when introduced by statute. See *Sorrell v. White*, 103 Vt. 277, 281, 153 A. 359, 361 (1931). Gross negligence has been defined as " 'a failure to exercise even a slight degree of care ... something more than an error of judgment ....' " *Rivard v. Roy*, 124 Vt. 32, 35, 196 A.2d 497, 500 (1963) (quoting *Emery v. Small*, 117 Vt. 138, 140, 86 A.2d 542, 543 (1952)). The concept of gross negligence left our law with the repeal of the

guest-passenger statute, 23 V.S.A. § 1491 (repealed by 1969, No. 194 (Adj. Sess.), § 1, effective March 12, 1970). In *Green v. Sherburne Corp.*, 137 Vt. 310, 313, 403 A.2d 278, 280 (1979), we noted that the gross negligence phraseology of the guest-passenger statute was "ineffective as a definition of duty." See also *Largess v. Tatum*, 130 Vt. 271, 277, 291 A.2d 398, 402 (1972) (describes the charge language of *Domina* as dicta and simply a way of "defining negligence").

We believe that the charge language of *Domina*, with its use of a gross error in judgment concept, is at best misleading and confusing. It suggests a standard of care higher than ordinary care. It seems internally inconsistent because we have defined gross negligence as something more than an error in judgment. We now hold that the trial court did not commit error in failing to give the *Domina* charge. In reaching this conclusion, we note that misleading "error in judgment" charges have been criticized by numerous courts around the country in recent years. See *Sleavin v. Greenwich Gynecology & Obstetrics, P.C.*, 6 Conn. App. 340, 343–48, 505 A.2d 436, 439–40 (1986); *Wall v. Stout*, 310 N.C. 184, 193, 311 S.E.2d 571, 577 (1984); *Ellis v. Springfield Women's Clinic, P.C.*, 67 Or. App. 359, 361–62, 678 P.2d 268, 269–70 (1984); *Shamburger v. Behrens*, 380 N.W.2d 659, 663 (S.D. 1986); *Teh Len Chu v. Fairfax Emergency Medical Assoc.*, 223 Va. 383, 386, 290 S.E.2d 820, 822 (1982); *Watson v. Hockett*, 107 Wash. 2d 158, 165–66, 727 P.2d 669, 673 (1986).

Even if the wording of the *Domina* charge requested by defendant had not been misleading, we are not prepared to find that the trial court must give it as a matter of law where the court has otherwise given a complete and detailed charge on medical malpractice under the elements of our statute. The requests here were basically argumentative, slanting the overall instructions towards the defendant. See *Watson v. Hockett*, 107 Wash. 2d at 162–63, 727 P.2d at 673 ("no guarantee" and "bad result" charges, if given, must be phrased in straightforward and nonargumentative manner). As we noted in *Largess v. Tatum*, the "error in judgment" charge is "but another way of defining negligence." 130 Vt. at 277, 291 A.2d at 402. It may in fact be better to avoid error in judgment language because such language is basically ambiguous and

subjective. See 1 D. Louisell & H. Williams, Medical Malpractice ¶ 8.04, at 205 (1977).

No juror who listened to the trial court's instruction on negligence and medical malpractice, along with its specific direction not to be swayed by sympathy for the plaintiff, could believe that the law requires a doctor to be infallible or that liability can be based solely on a bad medical result. Thus, in the absence of some showing of special need, we believe that the trial court's decision to charge in general terms without giving defendant's request falls within the trial court's power to select its own language and elaborate only where it sees the need to inform the jury. No showing of special need has been made in this case.

*Affirmed.*