STATE OF VERMONT
WASHINGTON COUNTY, SS.

FILED

2003 AUG -8 A 9: 00

SUPERIOR COURT
WASHINGTON COUNTY

MUBINA RADUJKOVIC, )
    Plaintiff, )
 )
 )
  v. )    Washington Superior Court
 )    Docket No. 555-10-01 Wncv
ROBERT JOHNSON, M.D., GREEN )
MOUNTAIN RADIOLOGY, INC., )
and CAROL VASSAR, M.D., )
    Defendants. )

## Decision on Defendant Vassar's Motion for Summary Judgment

In this medical malpractice case, Defendant Carol Vassar, M.D., has filed a motion for summary judgment. Plaintiff Mubina Radujkovic is represented by James H. Gray, Jr., Esq. Defendant Vassar is represented by Karen S. Heald, Esq. For the following reasons, Defendant Vassar's Motion for Summary Judgment is granted.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. See V.R.C.P. 56(c)(3). Where the moving party does not bear the burden of persuasion at trial, it may satisfy its burden of production by indicating an absence of evidence in the record to support the nonmoving party's case. The nonmoving party then has the burden of persuading the court there is a triable issue. See Mello v. Cohen, 168 Vt. 639, 639-40 (1998). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." Bickerstaff v. Vassar College, 196 F.3d 435, 452 (2d Cir. 1999).

Plaintiff injured her left wrist in a fall on September 9, 1999. She was examined that day by her primary care physician, Defendant Vassar, who observed swelling and pain. Dr. Vassar "requisitioned" x-rays of the wrist. A technician at Central Vermont Hospital took the x-rays, and Defendant Johnson interpreted them. Dr. Johnson concluded in his report: "Three views of the left wrist were obtained. I see no fracture or other significant bony abnormality." No follow-up x-rays were ordered. A technician reported Dr. Johnson's conclusion to Plaintiff. In fact, Plaintiff's wrist was fractured. By the time the fracture eventually was treated, it had healed, Plaintiff alleges, in a manner causing substantial pain and permanent damage.

Initially, Plaintiff sued only Dr. Johnson and his employer, Green Mountain Radiology, Inc., for medical negligence. At his deposition, Dr. Johnson testified that Dr. Vassar negligently requisitioned the x-rays, contributing to his failure to see the fracture or schedule a follow-up x-

1

ray. Plaintiff then amended the complaint to add Dr. Vassar as a defendant and to allege a medical negligence claim against her based on Dr. Johnson's allegations.

In a medical malpractice case, the plaintiff has the burden of proving:

(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by a reasonably skillful, careful, and prudent health care professional engaged in a similar practice under the same or similar circumstances whether or not within the state of Vermont.

(2) That the defendant either lacked this degree of knowledge or skill or failed to exercise this degree of care; and

(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

12 V.S.A. § 1908. Normally, a plaintiff's burden of proving these elements is "satisfied only by expert testimony." Larson v. Candlish, 144 Vt. 499, 502 (1984), quoted in Deyo v. Kinley, 152 Vt. 196, 204 (1989). "This rule has been adopted because normally a complicated medical procedure, not easily evaluated by a lay person, is at issue." Deyo, 152 Vt. at 204. However, "whether the plaintiff has met the burden of proof sufficient to send the case to the jury is a matter of law for the court to decide." Id. (citing Utzler v. Medical Center Hospital, 149 Vt. 126, 128-29 (1987)).

Plaintiff claims, specifically, that the applicable standard of care required Dr. Vassar to issue the x-ray requisition with specificity, at least indicating that the patient had fallen and that x-rays were ordered to determine whether a fracture had occurred. Dr. Vassar allegedly deviated from this standard of care by requisitioning x-rays of the wrist indicating only something to the effect of "left wrist pain." Dr. Vassar's deviation allegedly caused Dr. Johnson to rely on "incomplete and misleading information," contributing to Dr. Johnson's inability to see the fracture or failure to schedule a follow-up x-ray, causing the delay in treatment which resulted in the claimed harm.

Defendant Vassar argues that Plaintiff lacks evidence demonstrating a causal relationship between Dr. Vassar's conduct and Plaintiff's injuries. In part she argues that the information Dr. Johnson faults her for not providing in the requisition–that Plaintiff had fallen–was available to Dr. Johnson from other sources. She also argues that the Plaintiff is unable to establish a causal link between Dr. Vassar's alleged deviation from the applicable standard of care and Plaintiff's injuries.

Plaintiff's expert testimony regarding causation consists solely of portions of Dr. Johnson's deposition testimony. Plaintiff's attorney has indicated to Dr. Vassar's attorney as of December 27, 2002 that he did not plan to involve any additional experts on the claim against Dr. Vassar.

2

The most relevant portions of Dr. Johnson's testimony are as follows:

A      I had – I had incomplete and misleading information.

Q      And as far as you know, she [Dr. Vassar] had the information that could have made yours more complete?

A      I would like to think that if I would have known the patient had fallen and they were looking for a fracture, that particularly because of where the BB is, I would have asked for a follow-up film.

Deposition of Robert D. Johnson, M.D. dated June 3, 2002 at 54.

Q      . . . . Was it a deviation from accepted standards of care for you to have failed to diagnose this distal radial fracture when you reviewed the September 9, '99, X-rays?

A      No.

Q      Okay. And the reason that it was not a deviation is what?

A      There was no clinical history of trauma or injury, and without the clinical history, there was – the subtle finding – there's – there's no way to – to assess that as being a fracture without knowing that you're – that the patient has – has fallen and injured themselves. I mean, it – that finding could be normal variant, that finding.

Q      Okay. All right. Would it be fair to say then that had you been given the information that she had fallen on her hand and that the doctor wanted you to rule out a fracture, if that information had been given and you still failed to diagnose the fracture, would that have been a deviation of accepted standards of care?

. . . .

A      I would hope that I would have said that if the patient – if – that additional film – follow-up film – if the patient continues to have wrist pain, they should have follow-up films. That's what I think what would have – had I – it's hard to say whether I would have appreciated that subtle finding or not. In any event, with the BB where it was and the fact the patient has fallen and she has pain according to the BB near her scaphoid navicular bone, she should have had a follow-up X-ray in ten days.

Q      So whether you had been told about the mechanism of injury or not, your –

3

A       If I had been told about –

    . . . .

Q      Whether you had been told about the mechanism of injury or not, you can't tell us today whether it would have changed your interpretation of the film?

A      I think it would have changed my interpretation of the film.

Q      You would have found – you think you would have identified a fracture?

A      I think I would have at least recommended a follow-up film.

Q      Well, I understand that, but I'm talking about actual interpretation. Do you know on September 9, 1999, as you sit here today, if you'd have been given information about the mechanism of injury, accurate information, that that would have more likely than not led to a diagnosis of distal radial fracture?

    . . . .

A      I don't know. Certainly more likely I would have made the diagnosis, but I don't know for sure that I would have seen the subtle finding.

Q      What it – what you're pretty certain it would have done is – is it would have prompted you to probably put in your report something to the effect should follow up in ten days with further X-ray study?

A      Absolutely. That I – I feel comfortable saying I – I would have done that.

Q      And the – I guess through the process of distortion you'd expect to see some kind of evidence ten days later if in fact there was a fracture?

A      It's not uncommon to see healing changes within ten days that reveal fractures that are really invisible. I'm not saying this is invisible, but fractures that are invisible can often be seen ten days later because of healing change.

Deposition of Robert D. Johnson, M.D. dated June 3, 2002 at 73-75.

As it relates to causation in the claim against Dr. Vassar, the essence of Dr. Johnson's testimony is that if he had been given information from Dr. Vassar that Plaintiff fell, then while he still might not have seen the fracture initially, he 'thinks he would have' been more likely to request a ten day follow up x-ray, suggesting that at that time he might have seen a fracture because 'it is not uncommon' that some fractures "can often be seen . . . because of healing

4

change." This testimony falls short of a medical opinion sufficient to support a jury verdict on the element of causation. It consists of identification of possibilities that, even when given all inferences favorable to Plaintiff, call for the jury to speculate as to whether or not inferences necessary to fill in the gaps are reasonable ones. It does not constitute expert medical testimony, given to a reasonable degree of medical certainty, that Dr. Vassar's failure to specify in her requisition that Plaintiff had fallen was a proximate cause of the injuries Plaintiff claims.

## Order

For the foregoing reasons, Defendant Vassar's Motion for Summary Judgment is *granted*.

Dated at Montpelier, Vermont this 6th day of August, 2003.

Mary Miles Teachout
Superior Judge

5