## Horace and Sylvia Corbin v. James Dickerson

[586 A.2d 1104]

No. 88-407

Present: Peck, Gibson, Dooley and Morse, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed March 9, 1990

Motion for Reargument Denied December 21, 1990

---

*Robert P. Davison* and *Todd C. Hartsuff* of *Robert P. Davison, Jr., P.C.*, Stowe, for Plaintiffs-Appellees.

*Roesler & Whittlesey,* Burlington, for Defendant-Appellant.

**Dooley, J.** Defendant, James Dickerson, appeals the grant of an additur, or, alternatively, a new trial, by the superior court in favor of plaintiffs, Horace and Sylvia Corbin, in a suit in which plaintiffs sought damages arising out of the sale of duck decoys to defendant. We affirm.

On February 2, 1986, defendant, who was referred to plaintiffs by a mutual friend, went to plaintiffs' residence in order to look at plaintiffs' collection of duck decoys. After defendant examined the decoys, he offered to purchase one hundred and three decoys for $1,050 and plaintiffs accepted. Plaintiffs alleged and testified that defendant made a number of misrepresentations that induced them to sell him the decoys. Defendant disputed that he made any misrepresentations to induce the sale.

On the day defendant purchased the decoys, he attempted to call a decoy collector, and receiving no answer, contacted another collector familiar with the work of Maine decoy carver, Gus Wilson. Defendant was informed that many of the decoys he had purchased were carved by Gus Wilson and that others were machine-made Victor decoys. The collector informed defendant that the Wilson decoys were very valuable and tried to buy them.

One week later, on February 9, 1986, defendant returned to plaintiffs' residence to purchase more decoys. By that time, defendant clearly knew the value of the Wilson decoys and, in fact, had sold some of them. Defendant bought two more decoys for $125 after he allegedly stated that it was easier to sell the decoys in pairs. It appears that Gus Wilson carved at least one of these decoys.

Defendant sold one hundred of the decoys for a return net of sales cost of $61,590. Defendant sold the forty-one Victor decoys for $500. The Wilson decoys sold for as little as $200 each to over $3,000 each for the more valuable "Old Squaws." Defendant retained possession of five decoys, including one that he purchased from plaintiffs on February 9, 1986. The sales were itemized on plaintiffs' Exhibit No. 38, which was presented to the jury on a large chart, substantially as follows:

| No. Decoys[1] | | Type of Decoy | To Whom Sold | Price |
|---|---|---|---|---|
| 1 | Pair | Wilson 1 pr. Old Squaws | Miles | $ 6,500 |
| 2 | 41 | Victor | Miles | 500 |
| 3 | 10 | Wilson | Oliver | 11,500 |
| 4 | 12 | Wilson | Guyette | 23,590 |
| 5 | 12 | Wilson | Miles | 2,500 |
| 6 · | 1 | Wilson Old Squaw | Miles | 1,100 |
| 7 | 2 | Wilson | Weisman | 1,400 |
| 8 | 11 | Wilson | Miles | 10,000 |
| 9 | 10 | Wilson | Smart | 4,500 |
| 10 | 1 | Victor | | |
| | 4 | Misc. | | |
| | 105 | | | $61,590 |

Plaintiffs brought suit against defendant. They alleged twelve counts on which plaintiffs sought compensatory and punitive damages, including deceit, consumer fraud, breach of contract, conspiracy and negligent misrepresentation. The case went to the jury on the theories of fraud and negligent misrepresentation. The jury awarded plaintiffs $615.90 in compensatory damages and denied punitive damages. Pursuant to V.R.C.P. 59, plaintiffs moved for a new trial on the issue of damages, or, in the alternative, for a new trial on all issues, alleging that the damage award was inadequate.

In response to the Rule 59 motion, the court relied strongly on plaintiffs' evidence that defendant sold the decoys for $61,590 as presented on the chart that was shown to the jury. The court found that the damage award of $615.90 was "contrary to any of the evidence submitted and outside any of the

---

[1] It is apparent that the parties counted the pair of Wilson decoys sold in the first transaction as a single decoy.

instructions given by the court," but it was exactly 1% of the amount received by defendant for the decoys. The court concluded that the jury had found defendant liable on a theory of negligent misrepresentation but had misapplied the doctrine of comparative negligence resulting in a recovery of 1% of damages rather than the minimum of 51% of damages.

On this basis, the trial court denied plaintiffs' motion for a new trial "provided that Defendant shall on or before 30 days from the date of entry of this order file a written acceptance of an addition to the verdict herein in the amount of $30,795.10, for a total amended verdict and judgment in the amount of $31,411.00"—a sum equal to 51% of the defendant's sale price. If the defendant refused to grant the additur, the court ordered a new trial on all issues. Defendant declined to make the additur, and requested interlocutory review of the new trial decision.

Although defendant breaks the appeal issues into components, his basic argument is that the jury could have reached the damage amount they did based on a different, valid theory and, as a result, the decision to grant an additur and, alternatively, a new trial was erroneous. To evaluate fully this argument, we must first set forth the trial court's power to grant a new trial in a situation like that before the court and our power to review the trial court's decision.

The power of the trial court to grant a new trial as an alternative to defendant providing an additur is set forth in V.R.C.P. 59(a) as follows:

> A new trial shall not be granted solely on the ground that the damages are inadequate until the defendant has first been given an opportunity to accept an addition to the verdict of such amount as the court deems to be reasonable.

There is no question that the court followed the proper procedure in this case.

■ The discretion of whether or not to grant a motion for a new trial under Rule 59(a) is vested in the trial court, and we will overturn the decision only where there has been abuse of that discretion. See *Costa v. Volkswagen of America*, 150 Vt. 213, 217, 551 A.2d 1196, 1198 (1988). This Court must accord the trial court's ruling "all possible presumptive support." *Weeks v. Burnor*, 132 Vt. 603, 609, 326 A.2d 138, 141 (1974).

■ ■ As defendant argues, there are necessarily limits to the discretion we accord the trial court. While we give presumptive support to the trial court's ruling, it in turn must give presumptive support to the verdict of the jury. *Costa*, 150 Vt. at 217, 551 A.2d at 1199. In considering a new trial motion, the trial court must weigh the evidence in the light most favorable to the verdict and may not disturb the verdict unless it is clearly wrong. See *Hardy v. Berisha*, 144 Vt. 130, 133–34, 474 A.2d 93, 95 (1984). Under our case law, a verdict can be found clearly wrong and unjust if the jury has "disregarded the reasonable and substantial evidence" or found against the evidence "through passion, prejudice, or some misconstruction of the matter." *Weeks*, 132 Vt. at 609, 326 A.2d at 141. We interpret the trial court's decision in this case to be based on a conclusion that the jury verdict was inconsistent with the evidence because it misconstrued the calculation to be made in comparing the negligence of the plaintiffs to that of the defendant.

There is no question that the court's view of what occurred is a plausible theory of the jury's verdict. Plaintiffs' chart accounting for the one hundred and five decoys and showing that defendant made $61,590 from their sale was prominently before the jury. The verdict is precisely 1% of the amount shown on the chart. The fact that the jury rendered its verdict so precisely as to specify the number of cents reinforces the court's theory of the verdict.

Defendant presents an alternative way to reach the verdict, based on three major elements. First, defendant assumes that the jury found liability only for decoys defendant purchased on February 9. Second, defendant assumes that the jury found liability based on fraud, and not based on negligence, so that no negligence comparison was involved. Third, defendant argues that the jury could find that the value of one decoy, sold on February 9, was $615.90.

There is no question that the first two assumptions represent real possibilities.[2] The defendant's main difficulty is in showing that under his theory the jury could have reached a verdict of

---

[2] Defendant goes further and argues that the negligent misrepresentation theory was against the weight of the evidence so that there was "no reasonable basis" for the trial court's ruling. We agree that the jury could have found fraud, and not negligent misrepresentation, but we do not find the negligent misrepresentation theory to be against the weight of the evidence.

$615.90. On this point, he argues that there was no evidence establishing a sales price for the February 9 decoys, that the sales price of decoys varied greatly and that the average sales price of the decoys in issue was $615.90.[3] Defendant relies on the fact that the evidence did not disclose which decoys were sold on February 9.

The trial court's determination necessarily involved some evaluation of the weight of the evidence. See *Weeks*, 132 Vt. at 606, 326 A.2d at 140. The trial court observed the witnesses and was in a better position to evaluate the weight of the evidence than we are.

We conclude that the new trial award in this case was within the trial court's discretion and that the exercise of discretion was not based on untenable grounds. The jury award was clearly calculated as one percent (1%) of the net decoy sales proceeds as shown on plaintiffs' chart. We cannot accept as mere coincidence that the jury arrived at the exact amount to the penny by some other method.

Once we arrive at the method of calculation, defendant's argument for a theoretical alternative to that of the trial court becomes more difficult. At best, defendant's theory reduces plaintiffs' claim to the value of two decoys—those sold on February 9. However, we fail to see how the jury could find the damages to be $615.90 for the two decoys. The trial court properly found the verdict to be clearly wrong—i.e., against the evidence because of a misconstruction of the charge.

*Affirmed.*

---

[3] This argument is based on plaintiffs' chart that shows that 105 decoys brought $61,590. On the chart, no price was shown for five of the decoys. Thus, he argues that the total price of $61,590 represented only 100 decoys, or an average price of $615.90 per decoy.