## Maude and Michael Chater v. Central Vermont Hospital

[583 A.2d 889]

No. 88-576

Present: Allen, C.J., Dooley, J., and Barney, C.J. (Ret.) and Springer, D.J. (Ret.), Specially Assigned

Opinion Filed September 28, 1990

*Robert D. Rachlin, Robert B. Luce* and *Ernestine G. Abel* of *Downs Rachlin & Martin,* Burlington, for Plaintiffs-Appellants.

*Peter B. Joslin* and *Jeffry W. White* of *Theriault & Joslin, P.C.,* Montpelier, for Defendant-Appellee.

**Allen, C.J.** Plaintiffs, the parents of a child born at the Central Vermont Hospital, sued the hospital on their own behalf and for the child, alleging that the hospital's negligence during the child's birth resulted in the child's cerebral palsy and spastic quadriplegia and caused the parents to suffer emotional distress. The jury returned a verdict in defendant's favor, and plaintiffs appeal on the grounds that the court gave erroneous jury instructions, limited the child's appearance in court, and refused to grant a new trial. We affirm.

Plaintiff Maude Chater was an obstetrical patient of Dr. Arthur G. Spector, a member of the medical staff at defendant hospital. Prior to the expected delivery date, a sonogram revealed that the fetus was in the breech position, and a caesarean

section was planned. Mrs. Chater went into labor two days before the planned delivery and was admitted to the hospital at 1:55 p.m. Despite increasing labor and some signs of fetal distress, no fetal monitor was employed until 5:50 p.m., at which time, in plaintiffs' view, it indicated acute distress. The caesarean was not performed until 6:35 p.m., and the child Benjamin Chater was born asphyxiated, with no respiration or heartbeat. He was subsequently diagnosed as having cerebral palsy and is confined to a wheelchair for life, with multiple disabilities.

Plaintiffs' case against defendant hospital[1] was based on their contentions that a mother with a fetus in the breech position is considered to be in "high risk" labor, that Mrs. Chater's amniotic fluid indicated particular difficulties shortly after her admission to the hospital, and that numerous hospital practices and procedures failed to meet appropriate standards of care. Specifically, plaintiffs sought to prove that defendant hospital ignored national standards regarding the use of electronic fetal heart monitoring; that the hospital had a policy of not opening a second operating room except in case of emergency, so that Mrs. Chater's delivery was unduly delayed; that the hospital allowed Dr. Spector to practice alone, without providing for, or insisting on, alternative coverage when he was not available; that hospital nurses did not respond after noting the fetus's accelerated heart rate, as required by national standards, or take any of the numerous steps that plaintiffs contend are mandated in such circumstances; and that the hospital's chief of obstetrical services, though aware of the emergency, refused to assist in the delivery.

There is no dispute that the child's condition resulted from brain damage caused by severe oxygen deprivation in the last minutes before he was born. Plaintiffs' contend that the hospital could have prevented the delay that resulted in the permanent impairments.

Following presentation of evidence, the jury was asked to answer two questions on the verdict form. In response to the first question, the jury found the hospital negligent in its care of the

---

[1] Plaintiffs and defendant Spector settled their case prior to trial of the action against defendant hospital.

mother and unborn child. On the second question, the jury found that this negligence had not proximately caused the child's injuries.

## I.

On appeal, plaintiffs first argue that the trial court erred in instructing the jury on proximate cause. The instruction was given as follows:

> If you should determine, by a preponderance of the evidence, that there was a breach of duty owed to Plaintiffs as I have instructed, you must then determine whether that breach or breaches of the standard of care was or were the proximate cause of the Plaintiffs' injuries. You cannot find the Defendant liable simply because you may find that the Defendant breached a duty or standard of care. In other words, there must be some connection between the Defendant's actions and the Plaintiffs' injuries. This connection is called proximate cause. For example, if you should find that the Defendant failed to follow some applicable standard but that the failure to do so had no impact on what happened to the Plaintiffs, then you have not found proximate cause and you must find for the Defendant. Simply put, the mere failure to do something is not a basis for recovery unless it was a negligent failure and legally caused the injury or damage. The Plaintiffs must prove that the conduct complained of was a cause in fact of the allege[d] injuries.
>
> You have found proximate cause if it appears to you from the evidence in the case that the Defendant's negligence played a substantial part in bringing about the Plaintiffs' injuries and that the injuries to the Plaintiffs were in whole or in part a direct result or a reasonably probable or natural consequence of the Defendant's actions. In a medical malpractice case, you may not presume that the hospital was negligent solely because the patient had a bad outcome from the physician's treatment.
>
> Where two or more proximate causes combine to produce an injury, a recovery may be had if the Defendant is responsible for any one of them, though it may not be responsible for the others. As you know, the Plaintiffs originally sued both Dr. Arthur Spector and the Central Vermont Hospital.

The Plaintiffs have settled with Dr. Spector. The Plaintiffs claimed that both Dr. Spector and the Central Vermont Hospital were negligent. If you find that the negligent action or negligent inactions of the Central Vermont Hospital was a proximate cause, in any part, of injury on the part of the Plaintiffs, then you should find in favor of the Plaintiffs even if you find that Dr. Spector was also responsible for the Plaintiffs' injury.

Plaintiffs contend first that "[b]y using the term 'substantial part' without elaboration, the court improperly suggested that proximate cause was related to a 'quantity' of conduct. This was extremely prejudicial to Plaintiffs' case." Plaintiffs concede that the phrase "substantial factor" would have been acceptable, but that "substantial part" implies a particular fraction of the total causative factors.

Defendant responds, and the record confirms, that plaintiffs' counsel objected to the use of the word "substantial," but never complained about the use of the word "part." The following discussion took place during the in-chambers conference on jury instructions:

> [Counsel for plaintiffs]: I think, first of all, what we lawyers mean by a substantial part may not be what a lay person understands by that term. They may take "substantial" to mean that it was more than 50 percent. I would say that you might say "play a material *part*" or "played a significant *part*." I think "significant" says the same thing without having the implication of mass that "substantial" has.
>
> . . . .
>
> THE COURT: I always use the word "substantial." I guess I'll stick with it.
>
> [Counsel for plaintiffs]: Well, we would indicate our respectful objection to the word, despite the fact that it is time honored. (Emphasis added.)

Although no objection to the word "part" has been preserved, our consideration of the word "substantial" leaves us convinced that no error occurred in any event. In the context of the entire instruction, the use of the phrase "substantial part" did not connote any particular quantum of proximate cause. This distinguishes the instant instruction from that given in

*McDowell v. Davis*, 104 Ariz. 69, 448 P.2d 869 (1968). In that case, the jury instruction stated:

> Ladies and gentlemen, another test of proximate cause recognized by our law may be helpful to you. Was the negligent act of the party under consideration a material element or a substantial factor in producing the injury? *An act or an omission cannot be a proximate cause if it contributes only slightly or possibly to the result,* for a proximate cause is one which is a material element or a substantial factor in causing the injury.

*Id.* at 71, 448 P.2d at 871 (emphasis in original). The court emphasized that it was the contrast between the "slightly or possibly" language and the word "substantial" that resulted in prejudicial error. As the court put it, "[t]he instruction in using the word 'slightly' confirms the meaning of 'substantial' as 'abundance,' largeness as opposed to smallness." *Id.* at 72, 448 P.2d at 872.

There was no such contrast in the instruction before us. On the contrary, the balance of the instruction left no doubt that "substantial part" was not a phrase inviting any kind of quantification. The court instructed that, if the jury found defendant's negligence to be "a proximate cause, *in any part*, of injury on the part of the Plaintiffs, then you should find in favor of the Plaintiffs even if you find that Dr. Spector was also responsible for the Plaintiffs' injury." (Emphasis added.)

If one were to search the instruction for complementary or contrasting language, the parallel use of "part" in the phrases "substantial part" and "in any part" made clear that "substantial" in the former instance connoted merely that which was more than trivial or inconsequential.

■ We do not agree with plaintiffs that the court's instruction lent a quantitative connotation to the word "substantial." Therefore, it is not necessary to comment extensively on plaintiffs' next assertion of error—the trial court's failure to follow instruction language agreed upon by the parties, which stated that "[i]f you should find that the action or inaction of the Central Vermont Hospital was a proximate cause, in any part, of injury on part of the plaintiff, then you must find in favor of the plaintiff even if you find that Dr. Spector was equally respon-

sible *or even more responsible* for the Plaintiffs' injuries." (Emphasis added.) Instead of the agreed-upon language, the court used the phrase, "even if you find that Dr. Spector was also responsible for the Plaintiff's injury." Both the version agreed upon by counsel and the one used by the court include the words "proximate cause, in any part," which, again, amplify and adequately clarify "substantial part." The underscored words in plaintiffs' preferred version of the instruction at most would amplify the amplification; their absence did not dilute the impact of "in any part." A court has wide discretion in framing language used in a charge, and its failure to adopt text proffered by a party—or even language agreed upon by all—does not constitute reversible error as long as the instruction actually delivered was without error. See *Currier v. Letourneau*, 135 Vt. 196, 204, 373 A.2d 521, 527 (1977); *General Dynamics Corp. v. Federal Pacific Electric Co.*, 20 Mass. App. Ct. 677, 684, 482 N.E.2d 824, 828 (1985).

Plaintiffs next assert that the trial court's one-time use of the phrase "*the* proximate cause" tainted the instruction, confused the jury, and prejudiced plaintiffs' case. But the single reference to "the" proximate cause came at the outset of the instruction and was followed by at least eight references to "a" proximate cause or to other language that clearly conveyed the sense of that use of the indefinite article.[2] The instruction is

---

[2] The references in the instruction that may be fairly said to serve as a counterweight to the court's initial reference to "*the* proximate cause" are, in this Court's view, the following (emphasis added in all instances):

■ The Plaintiffs must prove that the conduct complained of was *a* cause in fact of the alleged injuries.

■ You have found proximate cause if it appears to you from the evidence in the case that the Defendant's negligence played *a* substantial part in bringing about the Plaintiffs' injuries

■ and that the injuries to the Plaintiffs were *in whole or in part. . .*
*a* direct result
or *a* reasonably probable or natural consequence of the Defendant's actions. . . .

■ Where two or more proximate causes combine to produce an injury, a recovery may be had *if the Defendant is responsible for any one of them*
. . . .

■ If you find that the negligent action or negligent inactions of the Central Vermont Hospital was *a* proximate cause, in any part, of injury on the part of the Plaintiffs,

close to that in *Cody v. Marcel Electric Co.*, 71 Mich. App. 714, 720, 248 N.W.2d 663, 667 (1976), where the court held it was harmless error to include a single use of the phrase "the proximate cause" where "[t]he jury was clearly instructed that there may be more than one proximate cause and that if a defendant's conduct is a proximate cause of the accident, he is liable." The court added that "[g]iven this explicit instruction, the isolated references to 'the' proximate cause were of little consequence. The plaintiff was not unduly prejudiced by these inadvertent errors." *Id.*; see also *Gantt v. Sissell*, 222 Ark. 902, 907, 263 S.W.2d 916, 919 (1954). Plaintiffs attempt to distinguish *Cody* by pointing out that the Michigan trial court "explained at length to the jury that it need not find one sole cause for plaintiff's injuries in order to find proximate cause." They disregard, however, the numerous references to "a" proximate cause and other clarifying statements in the instruction here at issue. In *Cody* the trial court stated: "A cause may be proximate although it and other cause[s] act at the same time or in combination to produce the occurrence." *Cody*, 71 Mich. App. at 720, 248 N.W.2d at 667. This is indistinguishable from the present instruction, where the trial court included in the discussion of proximate cause the statement that "[w]here two or more proximate causes combine to produce an injury, a recovery may be had if the Defendant is responsible for any one of them, though it may not be responsible for the others."

■ In sum, the jury instructions were not so ambivalent on the issue of proximate cause as to "open the way for the jury to follow either course indicated." *Kinsley v. Willis*, 120 Vt. 103, 111, 132 A.2d 163, 168 (1957); see also *Farmers' Exchange v. Brown*, 106 Vt. 65, 69, 169 A. 906, 908 (1934).[3]

---

■ then you should find in favor of the Plaintiffs *even if you find that Dr. Spector was also responsible for the Plaintiffs' injury.*

[3] Plaintiffs raise for the first time on appeal the additional contention that the words "legally caused" compounded the error inherent in use of the phrase "the proximate cause." Even if this point had been raised below and hence preserved for appeal, plaintiffs do not demonstrate that use of the concept of "legal cause" compounded what was surely a mistake in the charge, corrected by clear and accurate language thereafter.

Plaintiffs next argue that the following passage of the jury instruction, relating to defendant hospital's duty of care, was "incorrect, incomplete, incoherent, confusing, and misleading":

A hospital is bound through its agents to exercise toward a patient such reasonable care as the patient's known condition requires with the degree of care being in proportion to the specific patient's known condition of which the hospital should have knowledge.

Plaintiffs contend that the jury could not have understood from the quoted text whether the hospital's duty of care was limited to conditions actually known or to those that it should have known about.

The language was confusing, since "known condition of which the hospital should have knowledge" is ambiguous on the question of the scope of the hospital's duty. However, in its answer to the first interrogatory, the jury found the hospital negligent in its care of plaintiff, despite any possible confusion in the language at issue. Moreover, while plaintiffs stress an ungrammatical and confusing statement in the charge, they give insufficient weight to the statement immediately following the above-quoted language:

The hospital and its agents have no duty to intervene or intrude into the decisions of a private physician unless there is *reason to know* a patient is in danger and the physician is not taking reasonable measures to attend to his or her patient. (Emphasis added.)

While the garbled sentence attempted to address the hospital's *overall* duty—not simply that part of its duty that might be triggered by knowledge that a physician was not taking reasonable measures—plaintiffs do not indicate, on the basis of the evidence in this case, why the quoted language did not suffice to give the jury the functional equivalent of the duty owed by the hospital. The "reason to know" the fetus was in danger was the evidence of the mother's condition when she was admitted to the hospital, and the hospital's knowledge of Dr. Spector's failure to act efficaciously was the heart of plaintiffs' case.

In addition, the court instructed the jury quite specifically about the consequences of a failure by defendant's employees to transmit vital medical information:

If a hospital employee fails to report important information concerning a patient's condition to the physician and the omission is a proximate cause of an injury to the patient, the hospital may be liable for its employee's negligence.

■   Again, the first interrogatory is strong confirmation that the jury accepted plaintiffs' theory of negligence and that any confusion over the extent of the hospital's duty occasioned by the one garbled sentence was harmless error in light of the clarity of the overall instruction.

## II.

■   Plaintiffs next contend that the trial court abused its discretion in excluding Benjamin Chater from the courtroom during the direct examination of Dr. John W. Goldkrand, a fetal and obstetrical expert who testified on behalf of defendant. Plaintiffs had not challenged a pretrial order of another judge granting a bifurcated trial to avoid potential prejudice to defendant caused by the child's continuous presence in the courtroom during the liability phase of the trial. That pretrial ruling had allowed Benjamin Chater to be introduced to the jury but did not allow him to be present throughout on grounds of undue prejudice or disruption. Plaintiffs acquiesced in that earlier ruling but contend that at the trial of the cause against defendant hospital the court altered the scope of the earlier order, unduly narrowing the allowable appearances of the child and doing so without conducting a new evidentiary hearing.

Defendant argues that plaintiffs waived objection to the trial court's instant ruling on Benjamin Chater's presence during the testimony of Dr. Goldkrand. An in-chambers conference occurred on the 11th day of trial, prompted by defense counsel's objection that Benjamin Chater's presence that morning violated the terms of the pretrial order. Counsel for plaintiffs responded:

If the Court please, a couple of points. Number one, we have in fact kept his presence to the minimum. As I understood the Court's original, if not order, sort of ground rules that your Honor suggested, and that what we've tried to abide by was that we would have him here a) not too much, b) primarily during medical testimony.

.  .  .  .

. . . Our plan was not to keep him here for the whole morning but to have him here for probably until the first recess. And then I think plans have been made to let him go back. I think we've been pretty good about this.

As far as the distracting goes, all the times he's been here in the past has been during our case. And I can't help the fact that he's an appealing little kid, I mean it's a fact. . . .

THE COURT: We'll let you have the boy here when you're cross-examining this witness. During the presentation by Mr. Joslin, we'll ask that you have him out.

[PLAINTIFFS' COUNSEL]: I appreciate that. I'll need a little time.

There is no indication in the remarks of counsel that the compromise suggested by the court, allowing Benjamin Chater to be present during some, but not all, of the witness's testimony, was unacceptable or that it marked a departure from the prior ground rules. Moreover, there is no indication in the response of counsel to the court's ruling that the court was altering the pretrial order or that it should have conducted a second evidentiary hearing for that reason. Both parties appeared to accept that the court was applying the prior ruling to resolve a particular difference in interpretation, and the strong inference to be taken from the court's handling of the conflict is that plaintiffs' counsel was not displeased. Plaintiffs had to make their opposition to the court's ruling known at trial, and they did not do so. In fact, counsel's parting comment might well have conveyed the impression that the ruling was satisfactory, if not favorable, to plaintiffs. The complaint on appeal comes too late, and we have no occasion therefore to reach the constitutional issues raised concerning the right of a civil litigant to be present at all phases of his or her trial.

### III.

Finally plaintiffs contend that the trial court abused its discretion in failing to grant a new trial. An abuse of discretion may be found "'when the trial court has entirely withheld its discretion or where the exercise of its discretion was for clearly

untenable reasons or to an extent that is clearly untenable.'" *Costa v. Volkswagen of America*, 150 Vt. 213, 217, 551 A.2d 1196, 1199 (1988) (quoting *Lent v. Huntoon*, 143 Vt. 539, 552, 470 A.2d 1162, 1171 (1983)). Much of plaintiffs' argument on the new trial issue recapitulates their case on proximate cause and adds no new dimension to that issue. The balance of plaintiffs' case is that the evidence indicating defendant hospital's negligence was undisputed and overwhelming. However, the trial court was not free to reweigh the evidence as trier of fact. It was bound in considering plaintiffs' motion to view the evidence in the light most favorable to the jury's verdict. *Gregory v. Vermont Traveler, Inc.*, 140 Vt. 119, 121, 435 A.2d 955, 956 (1981); *McKenna v. May*, 134 Vt. 145, 148, 353 A.2d 359, 361 (1976). Plaintiffs argue that the evidence in favor of the hospital's negligence was undisputed, but the critical evidence to weigh against the jury's verdict is not plaintiffs' but that of the prevailing party, the defendant.

■ "Under our case law, a verdict can be found clearly wrong and unjust if the jury has 'disregarded the reasonable and substantial evidence' or found against the evidence 'through passion, prejudice, or some misconstruction of the matter.'" *Corbin v. Dickerson*, 155 Vt. 486, 490, 586 A.2d 1104, 1106 (1990) (quoting *Weeks v. Burnor*, 132 Vt. 603, 609, 326 A.2d 138, 141 (1974)). Plaintiffs state the case for their own outcome, but in this portion of their ample brief they make no mention of the evidence tending to support the jury's conclusion of no proximate causation. Such evidence includes expert testimony that the fetus was not in distress as late as 35 minutes before delivery, that the precursors to brain injury were not present at that time, and that the damage that occurred in the last ten minutes of the delivery process might have been avoided, had Dr. Spector agreed to a general, instead of the more time-consuming spinal, anesthetic. A review of the record indicates abundant evidence on both sides of the negligence question and jury instructions amply drawn and fairly calculated to guide the jury through its deliberations. The trial court did not err in denying the motion for a new trial.

*Affirmed.*