### Adam D. Lockwood b/n/f Daniel D. Lockwood, Daniel D. Lockwood and Katherine R. Lockwood v. C. Frederick Lord, M.D., C. Frederick Lord, M.D., P.C. and Mountain Orthopedic Associates, Inc.

[657 A.2d 555]

No. 93-413

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed December 16, 1994

Motion for Reargument Denied January 26, 1995

*Louis J. Cattani*, Woodsville, New Hampshire, and *Gavin A. Reid* of *Reid & Balivet*, Newbury, for Plaintiffs-Appellants.

*Robert Reis* and *Lisa Chalidze* of *Hull, Webber & Reis*, Rutland, for Defendants-Appellees.

**Johnson, J.** Plaintiffs, Adam Lockwood and his parents, appeal from a judgment notwithstanding the verdict, entered by the court for defendant Dr. Lord, after a jury verdict for plaintiffs. We reverse. Pursuant to V.R.C.P. 50(c), the trial court conditionally ordered a new trial if the judgment notwithstanding the verdict were reversed. We conclude that the grant of a new trial on the basis of the weight of the evidence was an abuse of the trial court's discretion. Defendant cross-appeals, claiming that the jury instructions were improper and that the damages were unsubstantiated and excessive. We find that defendant's cross-appeal regarding improper jury instructions is without merit. Because the trial court did not rule on defendant's motion for remittitur, we remand the issue of damages.

Plaintiff, an eleven-year-old boy with cerebral palsy, broke his left leg on December 13, 1986. Defendant, the orthopedic surgeon on call at Mt. Ascutney Hospital, set the fracture and applied a full-length cast to plaintiff's leg. Defendant conducted follow-up exams, and on January 20, 1987, replaced the full-length cast with a short leg cast. When this cast was removed on February 17, plaintiff was unable to walk, even with the assistance of a walker. On March 17, defendant evaluated plaintiff's left foot and observed a severe external rotation. Defendant recommended that plaintiff have an operation to correct this rotational deformity. In September 1987, a tibial osteotomy, performed in Burlington by another orthopedic surgeon, corrected the rotational deformity. In August 1988, plaintiff had a further operation to remove from his leg the hardware required for the first operation.

Plaintiffs sued defendant for medical malpractice. After a full trial with expert testimony from both sides, the jury awarded Adam Lockwood $230,000 and his mother Katherine Lockwood $20,000. The trial court granted defendant's motion for judgment notwithstanding the verdict (j.n.o.v.), concluding that plaintiffs did not introduce sufficient evidence to permit a jury to conclude that defendant had breached the standard of care proximately causing the injury. Believing that the verdict was against the great weight of the evidence, the court issued a conditional order, pursuant to V.R.C.P. 50(c), granting a new trial if the j.n.o.v. were reversed. Plaintiffs appeal, and defendant cross-appeals.

## I.

When reviewing the grant of a j.n.o.v. under V.R.C.P. 50(b), we must view the evidence in the light most favorable to the nonmoving party, excluding the effect of any modifying evidence. *Silva v. Stevens*, 156 Vt. 94, 113, 589 A.2d 852, 856 (1991). The grant of a j.n.o.v. is improper if there is any evidence that fairly and reasonably supports the nonmoving party's claim. *Id.* at 113, 589 A.2d at 856-57; see *Kinzer v. Degler Corp.*, 145 Vt. 410, 412, 491 A.2d 1017, 1018 (1985) (directed verdict and j.n.o.v. raise substantially the same legal questions and are therefore treated alike). Plaintiffs are entitled to every reasonable inference that may be drawn from the evidence. *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir. 1970); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2528 (1971); see *South Burlington Sch. Dist. v. Calcagni-Frazier-Zajchowski Architects, Inc.*, 138 Vt. 33, 40, 410 A.2d 1359, 1362 (1980) (in reviewing a motion for a directed

verdict, "plaintiff is entitled to the strongest inferences reasonably deducible from the most favorable evidence").

The principal issue on appeal is whether plaintiffs introduced sufficient evidence fairly and reasonably tending to prove that defendant breached the standard of care proximately causing the injury. To be successful in a medical malpractice suit, plaintiffs must prove:

> (1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by a reasonably skillful, careful, and prudent health care professional engaged in a similar practice under the same or similar circumstances whether or not within the state of Vermont.
> (2) That the defendant either lacked this degree of knowledge or skill or failed to exercise this degree of care; and
> (3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

12 V.S.A. § 1908. These elements must generally be proved by expert testimony. *Begin v. Richmond,* 150 Vt. 517, 520, 555 A.2d 363, 365 (1988). Defendant claims plaintiffs failed to provide sufficient evidence to permit a jury to find that the requirements of the second and third elements were satisfied.

■ We first address the element of the breach of the standard of care. Defendant argues that plaintiffs' expert relied solely on the result when concluding that defendant had breached the standard of care. We agree that a breach of the standard of care cannot be based solely on a bad medical result. *Deyo v. Kinley,* 152 Vt. 196, 209, 565 A.2d 1286, 1294 (1989). We conclude, however, that there was sufficient other evidence to permit a reasonable jury, drawing reasonable inferences from the evidence introduced, to conclude that defendant breached the standard of care.

■ Sufficient evidence introduced at trial fairly and reasonably proves that defendant breached the standard of care by improperly conducting follow-up exams and/or by improperly setting the fracture of plaintiff's left leg. A reasonable jury could have concluded that defendant breached the standard of care because the x-rays taken were insufficient to determine the rotational alignment of plaintiff's left leg in the cast. After a bone is set in a cast, follow-up exams are scheduled to determine, among other things, if the rotational align-

ment of the bone is correct. If an improper rotational alignment is diagnosed within a certain "window of opportunity," it can easily be corrected. Dr. Goodman, plaintiffs' expert, testified that an x-ray and/or a clinical examination is the proper procedure for verifying rotational alignment. Defendant testified that he used x-rays to verify the rotational alignment. Defendant also testified that, in this case, he thought there had been a three-week window of opportunity to correct any improper alignment.

Dr. Goodman testified at length about the x-rays taken in this case. He explained that to determine rotational alignment accurately, an x-ray must include both the joint above and the joint below the fracture. After reviewing the x-rays in plaintiff's file, Dr. Goodman testified that he could not determine anything about the rotation of plaintiff's leg. Furthermore, when asked what could have been done to prevent the rotational deformity of plaintiff's leg, Dr. Goodman testified that in his expert opinion, "there should have been *appropriate* clinical [examinations] and/or [x-rays] to be sure there was no rotary deformity during the care of the treatment of the fracture." (Emphasis added.)

■ From this evidence, viewed in the light most favorable to plaintiffs without any modifying evidence, a jury reasonably could have concluded that the x-rays taken by defendant were improper. While Dr. Goodman did not specifically state that the x-rays taken by defendant breached the standard of care, he implied that they were improper because they were insufficient to determine rotational deformity. According to Dr. Goodman's testimony, the standard for an x-ray used to determine rotational alignment requires the inclusion of both the joint above and the joint below the fracture. A jury reasonably could have concluded that this standard was breached because the x-rays in plaintiff's file did not include both joints and were therefore insufficient to determine the rotational alignment of plaintiff's left leg. If defendant had taken proper x-rays in the follow-up exam within the three-week window of opportunity, he would have been able to diagnose the misalignment and reset the fracture, preventing the subsequent operations.

■ Dr. Goodman's testimony should not be interpreted to conclude that x-rays must be taken to determine the rotation of every broken bone. Instead, the testimony merely asserts that if x-rays are relied upon to determine rotation, the appropriate x-rays must be taken. A reasonable juror in this case could have determined that

defendant did not take proper x-rays, thus breaching the standard of care.

A reasonable jury could also have concluded that defendant breached the standard of care because he improperly set plaintiff's leg at a rotational deformity of forty-five to fifty degrees. In discussing the standard of care for setting a fracture, Dr. Goodman testified that a rotation within ten to fifteen degrees is acceptable. Katherine Lockwood testified that after the short cast was removed, plaintiff was unable to walk, even with the help of a walker, because his foot hung to the left side at a ninety-degree angle.

Defendant's notes indicate that on February 17, when the short cast was removed, he observed that plaintiff had normal rotary alignment. Defendant testified that in his opinion the leg did not move while it was in the cast. On March 17, defendant's notes indicate he observed that plaintiff had a forty-five- to fifty-degree rotational deformity of his left foot. In reviewing these notes, Dr. Goodman found these observations incomprehensible. He thought it was impossible to go from normal alignment to a fifty-degree rotational deformity within one month without another fracture. From this evidence, a reasonable jury could have concluded that defendant's notes for February 17 were incorrect and that the rotational deformity when the short cast came off was forty-five to fifty degrees. Because defendant testified that the leg did not move while it was in the cast, a reasonable jury could have determined that the defendant breached the standard of care because he initially set the fracture at a rotational deformity of forty-five to fifty degrees.

Relying on *Smith v. Reitman*, 389 F.2d 303 (D.C. Cir. 1967), defendant argues that j.n.o.v. is proper because plaintiffs' expert did not provide sufficient testimony to prove that defendant had breached the standard of care. In *Smith*, the appellate court affirmed the trial court's directed verdict for the defendant because there was no evidence of negligence. *Id.* at 304. The plaintiff's expert testified "that he could not state whether the dentist performing the operation was guilty of negligence and that he could not give an opinion as to the correctness of the [defendant's] methods because he did not know what methods were used." *Id.* In contrast, plaintiffs' expert here was more specific. He stated that proper x-rays must show both the joint below and the joint above the fracture to determine rotational alignment, and strongly implied that defendant's x-rays were inadequate because he could not determine the rotational alignment from them. Further, plaintiffs' expert testified that an acceptable rotation

for setting a fracture would be within ten to fifteen degrees. Accordingly, a fracture set at forty-five to fifty degrees would be improper. Unlike the expert in *Smith*, the expert here provided ample evidence to permit a jury to conclude that defendant had used incorrect methods.

■ Next, we address the element of proximate cause. Defendant argues that there was insufficient evidence to permit the jury to conclude that the breach of the standard of care had proximately caused the injury. We disagree. Defendant testified that there was a three-week window of opportunity to correct any rotational defects. Because defendant breached the standard of care, he was unable to take advantage of the window of opportunity to correct the deformity. If defendant had not breached the standard of care, defendant would have been able to correct the deformity, and plaintiff would not have had to endure traumatic corrective surgery. We conclude that there was sufficient evidence to permit a jury to find proximate cause.

The weight of the evidence is the province of the jury. We merely conclude that viewing the evidence in the light most favorable to plaintiffs, including all reasonable inferences, there is sufficient evidence that fairly and reasonably supports a jury verdict that defendant had breached the standard of care proximately causing the injury.

## II.

Because we reverse the trial court's j.n.o.v., we must now determine whether the trial court's conditional order granting a new trial was proper. In granting a motion for a new trial, the court may exercise its discretion; we will reverse the decision only if there has been an abuse of that discretion. *Corbin v. Dickerson*, 155 Vt. 486, 489, 586 A.2d 1104, 1106 (1990). There are, however, limits to the court's discretion. Similar to the discretion we give to the court's ruling, the court must give presumptive support to the verdict of the jury. *Id.* at 490, 586 A.2d at 1106. In ruling on the motion for a new trial, the court must weigh the evidence in the light most favorable to the jury's verdict. *Hardy v. Berisha*, 144 Vt. 130, 133, 474 A.2d 93, 95 (1984). "This is because it is the protected duty of the jury to render a verdict, and a judge may not disturb that verdict unless it is clearly wrong." *Id.* at 134, 474 A.2d at 95 (citations omitted). A verdict is clearly wrong and unjust if the "jury has disregarded the reasonable and substantial evidence, or found against it, through passion, prejudice, or some

misconstruction of the matter." *Weeks v. Burnor*, 132 Vt. 603, 609, 326 A.2d 138, 141 (1974).

■ We conclude that the trial court abused its discretion in granting the motion for a new trial because the jury verdict was not clearly wrong. The trial court relied on the same reasoning it used in granting the j.n.o.v. As demonstrated above, this reasoning is not persuasive. Above, we ruled that the evidence, viewed in the light most favorable to plaintiffs, was sufficient to support the jury verdict. The trial court, weighing the evidence in the light most favorable to the verdict for plaintiffs, concluded that the verdict was against the weight of the evidence. This conclusion is incorrect because the court did not give proper consideration to the reasonable inferences capable of being drawn by the jury and did not give presumptive support to the jury's verdict. While the evidence may be subject to multiple interpretations, the trial court may not substitute its own judgment for that of the jury. The court's rationale indicates that it did substitute its judgment. Therefore, the court abused its discretion in conditionally granting the motion for a new trial.

"In case the motion for a new trial has been conditionally granted and the [j.n.o.v.] is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered." V.R.C.P. 50(c)(1). In this case, we reverse the trial court's grant of the motion for a new trial.

## III.

Defendant argues, on cross-appeal, that the jury instructions were improper. Defendant requested that the instructions include:

> The result of a physician's treatment is not evidence of malpractice. This means that you cannot infer negligence on the part of Dr. Lord just because there may have been a bad result to Dr. Lord's treatment of Adam Lockwood.

Instead, the trial court instructed the jury:

> The duty of care does not require a physician to guarantee a good result. Thus, if you find that under the circumstances of this case Doctor Lord met the standard of his profession, then he was not negligent regardless of the result of the treatment.

■ In charging the jury, the court is required to include every material point raised by the evidence; however, in doing so, the court may select its own language. *Deyo*, 152 Vt. at 206-07, 565 A.2d at 1295.

While the court's instruction contains slightly different language than defendant requested, it accurately conveys the same point of law. The instruction by the court clearly states that negligence cannot be based on a bad result alone. Therefore, the instruction was proper.

■ Defendant further claims that the instructions improperly included a discussion of increased risk of harm. Defendant argues that the jury could have considered increased risk of harm as a separate cause of action—a cause of action upon which no evidence was introduced. The increased-risk-of-harm language, however, was part of the proximate cause instruction. It was not included as a separate cause of action. The language by the court was an awkward way of differentiating multiple proximate causes. If anything, the language made it more difficult for the jury to establish proximate cause; therefore, the language would likely have worked in defendant's favor. We conclude that the jury instructions were correct because, taken as whole, they conveyed the true spirit of the law and did not mislead the jury. *State v. Gokey*, 136 Vt. 33, 36, 383 A.2d 601, 602 (1978) ("If the charge, taken as a whole and not piecemeal, breathes the true spirit of the law, and if there is no fair ground to say that the jury has been misled, then it ought to stand.").

Defendant also appeals the amount of the jury verdict, claiming (1) that the $20,000 for lost income to Katherine Lockwood was supported by insufficient evidence, and (2) that the $230,000 for pain and suffering to Adam Lockwood was excessive. Because the trial court granted j.n.o.v. for defendant, it did not rule on defendant's motion for remittitur. Before this Court can rule on the damages issue, the trial court must rule on defendant's motion. Therefore, we remand for the trial court to rule on the motion for remittitur.

*Judgment notwithstanding the verdict is reversed; conditional grant of a new trial is reversed. The jury instructions challenged on cross-appeal are affirmed. The cause is remanded for a ruling on defendant's motion for remittitur.*